Richard A. BALSER;  Corinne L. Balser, Plaintiffs–Appellants,

v.

DEPARTMENT of JUSTICE, OFFICE of the UNITED STATES TRUSTEE, Defendant–Appellee.

No. 02–35114.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 11, 2003.

Filed April 29, 2003.

M. Robert Dauber, Kiersten A. Murphy and Karen Stillwell. Arizona State University College of Law, Civil Practice Clinic, Tempe, AZ, attorneys for the appellants.

Robert P. Brouillard, Assistant United States Attorney, Seattle, WA, attorney for the appellees.

Before: D.W. NELSON, THOMAS, Circuit Judges, and PREGERSON, District Judge.[*]

## OPINION

THOMAS, Circuit Judge.

This appeal presents the question, *inter alia,* as to whether sovereign immunity bars a suit filed against a United States trustee acting in his official capacity based on acts conducted within the course and scope of his employment. We hold that it does and affirm the district court.

### I

The bankruptcy proceedings were initiated as three involuntary Chapter 7 petitions filed by Carillon Gardens Associates, LLC ("Carillon") against Homewood Development, Inc., Richard A. Balser, and Corinne L. Balser (collectively, "the debtors"). Eventually, the three petitions were administratively consolidated and converted to a Chapter 11 bankruptcy. The debtors thereafter acted as debtors-in-possession. Carillon moved for the appointment of an examiner in the case pursuant to 11 U.S.C. § 1104. The debtors

[*] The Honorable Dean D. Pregerson, United States District Judge for the Central District of California, sitting by designation.

stipulated to the appointment, and the bankruptcy court entered an order authorizing the United States trustee to appoint an examiner with expanded powers pursuant to 11 U.S.C. § 1104(c), including the power and duty to manage the debtors' rental properties and a power concurrent with the debtor to seek approval of sale of the properties subject to Carillon's secured claims. The United States trustee selected Perry Stacks ("Stacks") as the examiner, and the bankruptcy court entered an order approving the appointment after notice and hearing.

Carillon subsequently filed a request for relief from the automatic stay pursuant to 11 U.S.C. § 362(d) for the purpose of foreclosing on its secured claims against the debtors' real property. Shortly thereafter, the examiner filed a motion for approval of a proposed sale of the real property for a purchase price of $1,592,500, free and clear of liens pursuant to 11 U.S.C. § 363. After notice to creditors and all parties in interest, including the debtors, the bankruptcy court entered an order granting Carillon relief from the automatic stay, provided that any foreclosure sales not be conducted earlier than August 23, 1996. The purpose of this was to enable the examiner to complete the sales of the property. The debtors objected to the terms of the sale proposed by the examiner. However, the bankruptcy court approved the sale free and clear of liens on June 6, 1996. The bankruptcy court denied the debtors' motion for reconsideration on June 20, 1996. The debtors filed a notice of appeal of the order approving the sale. However, they did not pursue the appeal, and it was dismissed.

The bankruptcy court approved the debtors' joint plan of reorganization on June 22, 1999, and the Chapter 11 cases were closed on December 17, 1999.

On August 10, 2000, Richard and Corinne Balser ("the Balsers") contacted the Assistant United States trustee who had been assigned the debtors' case and complained about the examiner's conduct in the Chapter 11 cases. The Assistant United States trustee commenced an investigation and ultimately determined that there had been no evidence of fraud or other wrongdoing to require further action and so advised the Balsers. The Balsers then filed this *pro se* action on December 19, 2000, alleging that the United States trustee had acted negligently and fraudulently in connection with the appointment and supervision of the examiner. Specifically, the Balsers allege that two sales involving ten properties were conducted in a negligent and unlawful manner, which resulted in the sale of ten properties significantly below market value and without notice to the Balsers. In particular, the Balsers allege that examiner Stacks fraudulently collaborated with attorney Lawrence Ream ("Ream"), who served as the property buyer's attorney, even though he had a prior and existing business relationship with Stacks in which Ream provided legal representation and services to Stacks. The Balsers allege that the United States knew of the conflict of interest and fraudulent conduct, but it failed to follow its statutory duty to supervise the administration of Balsers' estate in a manner that protected the Balsers' interests.

The Balsers further asserted that the United States trustee's conduct violated their federal constitutional rights set forth in the Fifth, Seventh, Ninth, and Fourteenth Amendments. The Balsers sought injunctive and monetary relief, including a claim for approximately $5,000,000 in damages.

After first providing the Balsers with the opportunity to amend their complaint, the district court dismissed the complaint

on the basis that the United States trustee is immune from suit under the doctrine of sovereign immunity. The district court also concluded that if the suit had been brought against the United States trustee in his individual capacity, it would be barred by judicial immunity. The Balsers timely appealed.[1]

## II

### A

■■■ The United States, as a sovereign, is immune from suit unless it has waived its immunity. *See Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260, 119 S.Ct. 687, 142 L.Ed.2d 718 (1999); *U.S. v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980). A court lacks subject matter jurisdiction over a claim against the United States if it has not consented to be sued on that claim. *See McCarthy v. U.S.*, 850 F.2d 558, 560 (9th Cir.1988). "When the United States consents to be sued, the terms of its waiver of sovereign immunity define the extent of the court's jurisdiction." *U.S. v. Mottaz*, 476 U.S. 834, 841, 106 S.Ct. 2224, 90 L.Ed.2d 841 (1986) (citing *U.S. v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)). In sovereign immunity analysis, any lawsuit against an agency of the United States or against an officer of the United States in his or her official capacity is considered an action against the United States. *See Sierra Club v. Whitman*, 268 F.3d 898, 901 (9th Cir.2001).

■ In this case, the Balsers sued "The Department of Justice, Office of United States Trustee," which the Balsers now ask us to construe as an action against the United States trustee. However captioned, the suit plainly states a cause of action against the United States. The Department of Justice is undisputably an agency of the United States. *See* 28 U.S.C. § 501. The Office of United States Trustee is under the supervision of the United States Attorney General. *See* 28 U.S.C. § 581(a) & (c). The Attorney General of the United States is empowered to appoint United States trustees for each federal judicial district. *Id.* The term of the appointment is five years. *See* 28 U.S.C. § 581(b). Subject to certain restrictions that are not important to this analysis, the Attorney General fixes the annual salaries of United States trustees and assistant United States trustees. *See* 28 U.S.C. § 587. The United States trustee system is funded by the federal treasury by virtue of special fees collected in bankruptcy cases. *See* 28 U.S.C. § 589a(b).

In sum, the district court properly construed the Balsers' action against "The Department of Justice, Office of United States Trustee" as one against the United States. As such, the doctrine of sovereign immunity would apply unless waived by the United States.

### B

■■ A waiver of sovereign immunity by the United States must be expressed unequivocally. *See U.S. v. Nordic Village, Inc.*, 503 U.S. 30, 33, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). As a general matter, purported statutory waivers of sovereign immunity are not to be liberally construed. *Id.* at 34, 112 S.Ct. 1011.

■ The Balsers argue that the Bankruptcy Code provides an express waiver of

sovereign immunity for suits against United States trustees in 11 U.S.C. § 106(a). A close examination of the Code refutes this suggestion. Section 106(a) contains a waiver of sovereign immunity as to "a governmental unit." The phrase "governmental unit" is defined in 11 U.S.C. § 101(27) as follows:

"governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States *(but not a United States trustee while serving as a trustee in a case under this title)*, a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government;

*Id.* (emphasis supplied).

Thus, by its plain terms, the Bankruptcy Code does not contain an unequivocally express waiver of sovereign immunity for United States trustees. To the contrary, United States trustees expressly are excepted from the § 106(a) sovereign immunity waiver.[2] Thus, the Balsers' argument fails.[3]

### C

■ The Balsers argue, in the alternative, that the Federal Tort Claims Act ("FTCA") provides an avenue of relief. *See* 28 U.S.C. §§ 1346(b), 2671–80. The FTCA grants a limited waiver of sovereign immunity by making the United States liable to the same extent as a private person for certain torts of federal employees acting within the scope of their employment. *See* 28 U.S.C. §§ 1346(b)(1), 2674. The Balsers neither asserted this theory of liability in their pleadings nor requested that the district court grant leave to amend their complaint to assert this theory. On appeal, the Balsers request us to reverse the district court and require the district court to allow an amendment asserting this theory.

■ Generally speaking, we "will not consider an issue raised for the first time on appeal." *U.S. v. Robinson*, 20 F.3d 1030, 1032 (9th Cir.1994). Further, because the plaintiff is the absolute master of what jurisdiction it invokes, "[j]urisdiction may not be sustained on a theory that the plaintiff has not advanced." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 809 n. 6, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986).

■ These doctrines caution against the relief the Balsers seek, and even if they did not control the instant circumstances, the dispositive fact is that such an amendment would be futile. A suit under the FTCA is not available when the act or omission complained of is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government...." 28 U.S.C. § 2680(a). The Balsers' entire theory is founded on the United States trustee's alleged negligence in his general duties of selecting, monitoring, and investigating the examiner appointed in this case. As a matter of law, these are quintessentially acts of discretion within the meaning of the FTCA discretionary function excep-

---

**2.** The remedies provided by the Bankruptcy Code against the United States trustee are remedial in nature and to be conducted within the bankruptcy case. *See* Fed. R. Bankr.P. 2020.

**3.** The Balsers cite other provisions of the Bankruptcy Code referenced by § 106(a), emphasizing 11 U.S.C. § 1107. However, there is nothing in § 1107 that contains a waiver of sovereign immunity as to United States trustees. Indeed, that provision only references the rights, duties, and powers of a debtor-in-possession.

tion. *See Richman v. Straley,* 48 F.3d 1139, 1146–47 (10th Cir.1995); *Cf. Joelson v. U.S.,* 86 F.3d 1413, 1419 (6th Cir.1996) (noting that the relevant statutes guiding the United States trustee were broadly drawn and involved duties committed to the discretion of the United States trustee). Thus, even assuming a cause of action under the FTCA might be available under the instant circumstances (an issue on which we do not opine), allowing an amendment to the pleadings would be futile. Therefore, the Balsers are not entitled to appellate relief on this basis.

### III

■ The Balsers also allege that the United States trustee is liable for committing violations of the United States Constitution pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[4] Of course, to the extent that the Balsers are asserting a *Bivens* action, their claim does not abridge sovereign immunity because a *Bivens* suit is against a federal employee "in his individual rather than official capacity." *Holloman v. Watt,* 708 F.2d 1399, 1401 (9th Cir.1983). The existence of a *Bivens* claim therefore does not state a viable cause of action against the United States trustee acting in his official capacity.

■ The basis of a *Bivens* action is some illegal or inappropriate conduct on the part of a federal official or agent that violates a clearly established constitutional right. *See Davis v. Passman,* 442 U.S.

228, 241–44, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). The district court held that the Balsers' *Bivens* claim was barred by the doctrine of judicial immunity. *See Butz v. Economou,* 438 U.S. 478, 511, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

■ We previously have extended private bankruptcy trustees quasi-judicial immunity for "actions that are functionally comparable to those of judges, i.e., those functions that involve discretionary judgment." *Curry v. Castillo (In re Castillo),* 297 F.3d 940, 947 (9th Cir.2002); *see also Lonneker Farms, Inc. v. Klobucher,* 804 F.2d 1096, 1097 (9th Cir.1986) (holding that "a trustee in bankruptcy ... is entitled to derived judicial immunity because he is performing an integral part of the judicial process"). We have not had the occasion to consider whether judicial or quasi-judicial immunity covers the conduct undertaken by United States trustees. To determine whether such an immunity applies, we must examine the functions that a United States trustee performs, analyzed in their historic context. *See Antoine v. Byers & Anderson, Inc.,* 508 U.S. 429, 432, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993).

■ The office of United States trustee was created by The Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub.L. No. 99–554, 100 Stat. 3088 (1986).[5] "The primary purpose behind the creation of the office of United States trustee [was] to remove the bankruptcy courts from the administration of bankruptcy cases." H.R.Rep. No. 95–595, at 113 (1977), *re-*

---

4. The pleadings do not name the trustee individually, as required in a *Bivens* action. However, the Balsers seek leave to amend to name the correct parties. Because such an amendment would be futile, as discussed in this section, we need not reach the question of whether the district court should have allowed substitution of parties.

5. The United States trustee system was introduced by the Bankruptcy Reform Act of 1978 as an experimental pilot project to be implemented in eighteen judicial districts. Pub.L. No. 95–598, 92 Stat. 2549 (1978).

*printed in* 1978 U.S.C.C.A.N. 5963, 6074. In general, the United States trustee is charged with the duty to supervise the administration of cases and trustees in bankruptcy cases commenced under Chapters 7, 11, and 13 of the Bankruptcy Code. *See* 28 U.S.C. § 586(a)(3). Although one of the primary functions of the United States trustee is to maintain and supervise a panel of private trustees, *see* 28 U.S.C. § 586(a)(1), a United States trustee may also serve and perform the duties of a private trustee under certain circumstances. *See* 28 U.S.C. § 586(a)(2). In short, the United States trustee performs many of the functions that had been assigned previously to the bankruptcy judge.

As we noted in *Curry*, the bankruptcy system historically has been comprised of both administrative and judicial functions, administered by the courts. 297 F.3d at 949–52. Nonetheless, we reasoned that the discretionary acts of a private trustee were protected by quasi-judicial immunity, because some "acts [in bankruptcy proceedings] which taken out of context would appear ministerial ... are actually part of the judicial function." *Id.* at 952. Here, the relevant question is whether such immunity should extend to acts and conduct undertaken by United States trustees in their course of employment. In light of the fact that United States trustees assume the judicial functions historically vested in bankruptcy and district courts, the actions of the United States trustees logically must be cloaked in the same immunity.

The Balsers contend that some of the actions taken by the United States trustee were those of a private trustee. As an initial matter, such assertion is belied by the record: The Balsers at least initially served as debtors-in-possession in the Chapter 11 proceedings, and there is no evidence that the United States trustee ever assumed the role of private trustee in the proceedings. Nonetheless, even if the record supported the Balsers' contention, such a fact would not alter whether the United States trustee is entitled to immunity. Even if a United States trustee performs the duties of a private trustee, the United States trustee must necessarily receive the immunity that attaches to actions undertaken by private trustees. *Curry*, 297 F.3d at 943.

■ Further, it is important to note that most of the acts that the Balsers allege were unlawful (such as the appointment of the examiner and the sale of the properties) were approved by the bankruptcy court. To the extent that the Balsers' claims allege failure of the United States trustee to assert a specified position in the bankruptcy court proceedings, those claims are barred by the *Noerr–Pennington* doctrine, which "protects advocacy before all branches of government." *Kottle v. NW Kidney Centers*, 146 F.3d 1056, 1060 (9th Cir.1998); *see also United Mine Workers v. Pennington*, 381 U.S. 657, 669–70, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); *E. RR Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 137, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961).

■ In addition, the consequence of the bankruptcy court approval of the sales is that the Balsers' constitutional rights were addressed and satisfied in the bankruptcy proceedings. The constitutional right upon which the Balsers base their claim is the Fifth Amendment right not to be deprived of property without due process of law. The bankruptcy court, upon motion of a creditor, first determined that the Balsers had no equity interest in the property that is the subject of the litigation, and then authorized the examiner to sell during a limited period before the automatic stay was lifted. The proposed sales were presented to the bankruptcy

court and approved after a notice and a hearing. The Balsers presented their objections to some of the sales to the bankruptcy court. This process is designed to, and in this case did, protect the Balsers' constitutional rights under the Fifth Amendment.[6] *See, e.g.,* 11 U.S.C. §§ 361, 363(k).

For all of these reasons, the district court correctly dismissed the Balsers' *Bivens* claims against the United States trustee.

## IV

■ The Balsers also claim in supplemental briefing that the district court erred in denying them leave to amend to add additional parties. The Balsers do not express any legal basis for reversing the decision of the district court other than the liberality generally afforded *pro se* litigants. "Issues not raised in the opening brief usually are deemed waived." *Dilley v. Gunn,* 64 F.3d 1365, 1367 (9th Cir.1995). Given the district court's careful treatment and allowance of prior amendments, we see no reason to exercise our discretion to entertain this new issue not raised in the opening brief.

**AFFIRMED.**

---

6. Their immediate remedy was to appeal the decision of the bankruptcy court and obtain a stay of the sale. They voluntarily elected to abandon their appeal. Further, if the Balsers suspected a collusion in the sales, presumably they could have pursued a remedy in the bankruptcy proceedings as debtors in possession under 11 U.S.C. § 363(n). They failed to do so. Rather, a reorganization plan was confirmed that did not reserve any claims. The confirmed plan acted as res judicata as to claims that could have been raised in the bankruptcy proceeding, but were not. *See Trulis v. Barton,* 107 F.3d 685, 691 (9th Cir. 1995); *Lawrence Tractor Co. v. Gregory (In re Gregory),* 705 F.2d 1118, 1121 (9th Cir.1983).