NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MAR 15 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MARCELINA CARRILLO PABLO,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

No. 18-71864

Agency No. A070-656-276

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted August 31, 2020[**]
Seattle, Washington

Before: BYBEE and COLLINS, Circuit Judges, and BASTIAN,[***] District Judge.

Guatemalan citizen Marcelina Carrillo Pablo petitions for review of the

decision of the Board of Immigration Appeals ("BIA") affirming the order of the

Immigration Judge ("IJ") denying her request for asylum, withholding of removal,

and protection under the Convention Against Torture ("Torture Convention") and

ordering her removed. We have jurisdiction under § 242 of the Immigration and

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes that this case is suitable for decision without oral argument. *See* FED. R. APP. P. 34(a)(2)(C).

[***] The Honorable Stanley A. Bastian, Chief United States District Judge for the Eastern District of Washington, sitting by designation.

Nationality Act. 8 U.S.C. § 1252. We review the agency's legal conclusions de novo and its factual findings for substantial evidence. *Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1059 (9th Cir. 2017) (en banc). A finding is supported by substantial evidence unless "'any reasonable adjudicator would be compelled to conclude to the contrary' based on the evidence in the record." *Ai Jun Zhi v. Holder*, 751 F.3d 1088, 1091 (9th Cir. 2014) (quoting 8 U.S.C. § 1252(b)(4)(B)). We deny the petition.

1. The agency properly concluded that Carrillo Pablo was ineligible for asylum because she failed to establish past persecution or a well-founded fear of persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion." *See* 8 U.S.C. §§ 1101(a)(42)(A); *see also id*. § 1158(b)(1)(B). In contending that she established persecution on account of such a protected ground, Carrillo Pablo relies on her asserted membership in two "particular social group[s]" and on the asserted "political opinion[s]" imputed to her by her persecutors. The agency did not err in rejecting these claims.

a. The agency properly concluded that Carrillo Pablo's proposed social group of "married indigenous women whose husbands are absent" was not sufficiently particular and therefore not cognizable. To be sufficiently particular, a proposed social group must have "characteristics that 'provide a clear benchmark for determining who falls within the group,'" meaning that "the relevant society

2

must have a 'commonly accepted definition[]' of the group." *Nguyen v. Barr*, 983 F.3d 1099, 1103 (9th Cir. 2020) (citation omitted). "'The group must also be discrete and have definable boundaries—it must not be amorphous, overbroad, diffuse, or subjective.'" *Id.* (citation omitted). As the BIA recognized, Carrillo Pablo's amorphously defined group could include "women whose husbands are absent either temporarily or permanently, and for any reason at all." It could include widows and divorcées, as well as women whose husbands are missing, who have abandoned their home, or who are merely away working for a limited or an extended period of time. Because the proposed group is defined in such an overbroad and diffuse manner, it lacks the sort of "'sufficiently distinct'" boundaries needed to qualify as a "'discrete class of persons'" within the relevant society. *Henriquez-Rivas v. Holder*, 707 F.3d 1081, 1091 (9th Cir. 2013) (en banc) (citation omitted). In support of a contrary conclusion, Carrillo Pablo presented evidence that married women living in Guatemala are more vulnerable to harassment or crime when their husbands are not present, but that does not establish that her proposed social group has clear benchmarks and a commonly accepted definition within Guatemalan society.

b. The IJ assumed, without deciding, that Carrillo Pablo's second proposed social group—"single indigenous female heads of households in Guatemala"—was cognizable, but the IJ held that she did not show she had suffered harm on account

3

of her membership in that group. Carrillo Pablo asserts that she was harmed by three different persecutors on account of this social group, but we conclude that substantial evidence supports the agency's rejection of these claims.[1]

First, the agency permissibly concluded that Carrillo Pablo's rape by a man named Calixto was not on account of her membership in this proposed social group. The BIA upheld the IJ's finding that the rape was a "random criminal sexual assault" by someone who, at the time, was a stranger to Carrillo Pablo. Because the agency reasonably found that Calixto did not know Carrillo Pablo's status at the time he attacked her, substantial evidence supports the BIA's determination that he did not target her based on her membership in this proposed social group. Carrillo Pablo presents a variety of arguments as to why the IJ and the BIA should have reached a different conclusion, but we may not disturb the agency's reasonable reading of the record. *See* 8 U.S.C. § 1252(b)(4)(B).

Second, the agency did not err in concluding that Carrillo Pablo's father-in-

---

[1] Carrillo Pablo mentions in passing in her opening brief that she was also persecuted by "phone extortionist(s)" who sought money from her in 2012. But her brief contains no argument explaining why the IJ was wrong in rejecting this claim, and the point is therefore forfeited. *See Balser v. Dep't of Justice*, 327 F.3d 903, 911 (9th Cir. 2003). Indeed, Carrillo Pablo did not challenge this point in her brief before the BIA, which therefore did not address it. *See Abebe v. Mukasey*, 554 F.3d 1203, 1207–08 (9th Cir. 2009) (en banc) ("Petitioner will . . . be deemed to have exhausted only those issues [s]he raised and argued in [her] brief before the BIA."). Carrillo Pablo's opening brief does assert that she was persecuted based on a burglary of her home in 2013, but she did not challenge that point in her brief to the BIA, and it is therefore likewise unexhausted. *See id*.

law, who hit her twice, did not target her based on her membership in her proposed social group. Carrillo Pablo testified that her father-in-law "didn't want [her] to find another man" after his son disappeared and that, to keep her from going out without permission, he hit her once with his belt and once with his hand. She stated that he "wanted to keep [her] there as his daughter-in-law," because he "didn't want to think that his son had died." The agency reasonably found that the father-in-law committed this abuse because he wanted Carrillo Pablo to wait for his son in case he returned, and not because "she was the head of her household." Carrillo Pablo argues that the agency should have weighed the evidence differently, but once again we may not set aside its reasonable reading of the record.

Third, the agency properly concluded that the harassment that Carrillo Pablo experienced from a neighbor named Marcelo did not rise to the level of persecution. After Carrillo Pablo's husband disappeared, Marcelo threatened her "several times," saying, for example, "I know that you're living alone, and one of these days, you are going to be mine, and, if not, . . . what happened to your husband is what's going to happen to you." On several occasions, he threw beer bottles and yelled insults and bad words at Carrillo Pablo when he was drinking.[2]

---

[2] In her declaration in support of her asylum application, Carrillo Pablo stated that the beer bottles were thrown not just by Marcelo, but also by other men in the town

This combination of drunken harassment and unfulfilled threats does not compare to the sort of "extreme cases" in which "we have held that repeated and especially menacing death threats can constitute a primary part of a past persecution claim." *See Lim v. INS*, 224 F.3d 929, 936 (9th Cir. 2000). Because Marcelo's actions did not amount to persecution, the agency properly rejected Carrillo Pablo's claim that he persecuted her based on her proposed social group.

c. Carrillo Pablo's claim that she was persecuted on account of an imputed political opinion rests on her assertion that Marcelo's mistreatment was due to his anger at her husband's actions when the latter had served as a local auxiliary. Because we have concluded that Marcelo's actions did not rise to the level of persecution, this claim was properly rejected as well.

d. Given that Carrillo Pablo did not establish past persecution, she could not carry her burden to establish a well-founded fear of future persecution unless she showed that it would be unreasonable to relocate to another part of Guatemala to avoid persecution. *See Kaiser v. Ashcroft*, 390 F.3d 653, 659 (9th Cir. 2004); 8 C.F.R. § 208.13(b)(2)(ii). The agency permissibly concluded that Carrillo Pablo had failed to show that any of her three persecutors would look for her in other parts of Guatemala. Beyond that, the agency noted that, although Carrillo Pablo

---

who (like Marcelo) had been punished by her husband when he served as a local auxiliary. In her hearing testimony, Carrillo Pablo only discussed Marcelo throwing bottles.

had presented evidence of discrimination against indigenous people in Guatemala, she did not show that she would thereby face a risk of harm amounting to persecution throughout Guatemala.

2. The BIA also properly rejected Carrillo Pablo's claim for withholding of removal. Because the IJ specifically held that Carrillo Pablo had failed to show that her second proposed social group was "a reason" for any of her mistreatment, the IJ concluded that her withholding of removal claim also failed for lack of the requisite nexus to a protected ground. *See Barajas-Romero v. Lynch*, 846 F.3d 351, 360 (9th Cir. 2017). The BIA, in turn, upheld the IJ's conclusion that Carrillo Pablo's "persecutors were not motivated on account of her membership" in her second proposed group. Accordingly, our conclusion that the agency correctly found a lack of nexus as to Calixto and the father-in-law extends to Carrillo Pablo's withholding claim as well. *See Singh v. Barr*, 935 F.3d 822, 827 (9th Cir. 2019). And because, in other relevant respects, the burden to establish a withholding claim is higher, it follows that Carrillo Pablo's withholding claim fails in light of her failure to establish her eligibility for asylum. *See Davila v. Barr*, 968 F.3d 1136, 1142 (9th Cir. 2020).

3. For largely the same reasons discussed earlier, we conclude that substantial evidence supports the agency's determination that Carrillo Pablo could reasonably relocate to another part of Guatemala. As a result, the agency properly

7

held that she did not establish a likelihood of torture, and her claim for relief under the Torture Convention was therefore properly rejected.  *See Maldonado v. Lynch*, 786 F.3d 1155, 1164 (9th Cir. 2015) (en banc).

The petition for review is **DENIED**.