**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

JOSE ARTEMIO PEREZ-MARTIN,
                    *Petitioner,*

v.

JOHN ASHCROFT, Attorney General,
                    *Respondent.*

No. 03-70923

Agency No.
A92-958-263

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
December 8, 2004—Pasadena, California

Filed January 12, 2005

Before: Betty B. Fletcher, John T. Noonan, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Betty B. Fletcher

**COUNSEL**

Orit Levit, Korenberg, Abramowitz & Feldun, Sherman Oaks, California, for the petitioner.

Elizabeth J. Stevens, U.S. Department of Justice, Washington D.C., for the respondent. With her on the briefs was Lisa M. Arnold.

**OPINION**

B. FLETCHER, Circuit Judge:

In this petition for review of his removal order, petitioner Jose Artemio Perez-Martin ("Perez") challenges the Legalization Appeals Unit ("LAU")'s denial of his 1988 application for temporary resident status as a Special Agricultural Worker ("SAW"). Perez claims both that the LAU erred substantively in denying his application, and that the Immigration Judge ("IJ") and Board of Immigration Appeals ("BIA") erred in refusing to review the LAU's decision as part of the removal proceedings against Perez. This case raises important questions about our jurisdiction and about the operation of the statute governing SAW benefits, 8 U.S.C. § 1160. We hold that we have jurisdiction to review the denial of SAW status, and

that neither the IJ nor the BIA has such jurisdiction. On the merits, we deny the petition for review.

## I. BACKGROUND

Federal law confers temporary resident status on any alien who qualifies as a "Special Agricultural Worker." 8 U.S.C. § 1160(a)(1). To qualify for this designation, an alien must establish that he or she resided in the United States and performed at least 90 days of "seasonal agricultural services" during the twelve-month period ending on May 1, 1986. *Id.* § 1160(a)(1)(B). An applicant for SAW adjustment of status has the burden to prove qualifying employment by a preponderance of the evidence, *id.* § 1160(b)(3)(B)(i), which may include government records, employer or union records, or "such other reliable documentation as the alien may provide," *id.* § 1160(b)(3)(A). Once the applicant has produced evidence sufficient to show qualifying employment "as a matter of just and reasonable inference," the burden shifts to the government to "disprove" the applicant's evidence "with a showing which negates the reasonableness of the inference to be drawn from the evidence." *Id.* § 1160(b)(3)(B)(iii).

The statute sets out the exclusive procedures for administrative and judicial review of agency decisions determining SAW status. *Id.* § 1160(e)(1). Within the agency, a denial of SAW status is subject to a single level of administrative review by an appellate authority that the Attorney General establishes for this purpose. *Id.* § 1160(e)(2)(A). Judicial review of the agency's denial of SAW status is permissible only in the context of the review of an order of removal. *See id.* § 1160(e)(3)(A).[1]

In December 1988, Perez applied for temporary resident status as a SAW. In his application, Perez claimed as qualify-

---

[1]The judicial review provision is discussed in detail below in connection with our analysis of our jurisdiction.

ing employment 103 days of picking and weeding strawberries for Juan Ramirez at the Santa Maria Berry Farms in Santa Barbara, California. In support of his claim, Perez submitted an affidavit from Ramirez claiming personal knowledge that Perez worked 103 days picking and weeding strawberries for Ramirez and his wife between May 1 and October 14, 1985.

Seven months later, in response to a grand jury subpoena, Juan Ramirez signed a declaration casting substantial doubt on Perez's claim. In the declaration, Ramirez stated:

> I have been advised that several apparently forged documents have surfaced which purport to bear my signature. I have not condoned the use of fraudulent documents, nor have I lent my signature to documents for non-employees. For this reason, I hereby specifically disavow and renounce any and all such documents. I have given no one authority to sign on my behalf and I know of no one who has reason to sign for me. Any document which purports to bear my signature in reference [to] any INS application should therefore be regarded as null and void.

An INS agent then spoke to Raul Segura, the Office Manager for Santa Maria Berry Farms. According to the INS report recounting the interview, Segura said that during the time Ramirez worked land owned by Santa Maria, Ramirez employed no more than two to three individuals at any given time, and those individuals "were continuously being replaced by newly hired employees."

In March 1991, the Service issued a Notice of Intent to Deny Perez's SAW application, on the basis of Ramirez's second affidavit and of the facts provided by Segura. In response to the Notice, Perez submitted a letter on Santa Maria Berry Farms letterhead from Juan Ramirez. Entitled "To: Immigration and Naturalization Service / Re: Jose Artsmio [sic] Perez Martin," the letter states that Ramirez is

a strawberry grower and that from 1985-88, the harvesting season was approximately six months, Ramirez paid his workers in cash, and no records were kept. The letter contains no specific information regarding Perez, but it concludes: "I understand that the purpose of this letter is to verify this individual's employment by me, in connection with an application for an immigrant visa." The Service, suggesting it did not find the additional letter from Ramirez to be credible, denied Perez's SAW application.

Perez appealed the decision to the LAU, which dismissed the appeal in October 1994. According to the LAU, the final Ramirez letter did not "overcome the adverse evidence" submitted by the government because the letter failed to address either the Segura statement or Ramirez's own previous affidavit declaring that all employment documents bearing his name should be considered "null and void."

In July 1999, the INS charged Perez with removability under Immigration and Nationality Act section 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), for being an alien present in the United States without having been admitted or paroled. At his hearing six months later, Perez conceded removability but sought review before the Immigration Judge ("IJ") of the denial of his SAW application. After the issue was briefed, the IJ concluded in June 2000 that the SAW statute foreclosed review of a SAW application by the IJ. The IJ denied adjustment of status and granted Perez voluntary departure, with an alternate order of removal to Mexico. Perez appealed to the BIA, which affirmed the IJ in a brief order.

Perez then petitioned this court for review.

## II.   JURISDICTION

Our authority to review the denial of Perez's application for SAW status is not immediately clear. Though the parties do not discuss this issue beyond Perez's bare assertion that judi-

cial review of SAW applications has been preserved, we have an independent obligation to inquire into our own jurisdiction. *See Mitchell v. Maurer*, 293 U.S. 237, 244 (1934). The existence of jurisdiction is a question of law reviewed de novo. *Chang v. United States*, 327 F.3d 911, 922 (9th Cir. 2003).

**[1]** The SAW statute provides: "There shall be judicial review of such a denial [i.e., of SAW status] only in the judicial review of an order of exclusion or deportation under section 1105a of this title (as in effect before October 1, 1996)." 8 U.S.C. § 1160(e)(3)(A). The parenthetical was added to the statute by section 308(g)(2)(B) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-612 ("IIRIRA"), a law that also repealed former 8 U.S.C. § 1105a, *see* IIRIRA § 306(b); amended 8 U.S.C. § 1252 to govern judicial review of removal orders, *see* IIRIRA § 306(a); and in general consolidated the former categories of "deportation" and "exclusion" under the single concept of "removal."

**[2]** Post-IIRIRA, this court has jurisdiction to review the BIA's final order of removal under 8 U.S.C. § 1252(a)(1). The jurisdictional question we face today is whether the SAW statute's provision for judicial review, 8 U.S.C. § 1160(e)(3)(A), still applies when judicial review is premised on 8 U.S.C. § 1252 rather than the section specified in the SAW statute, the now-defunct 8 U.S.C. § 1105a.

**[3]** Though it appears no federal court has addressed this question, the Fourth Circuit has interpreted language nearly identical to that of 8 U.S.C. § 1160(e)(3)(A) as preserving judicial review of legalization decisions in post-IIRIRA judicial review of removal orders. Specifically, in *Orquera v. Ashcroft*, 357 F.3d 413 (4th Cir. 2003), the Fourth Circuit considered whether its review of a removal order could include a review of a denial of amnesty under 8 U.S.C. § 1255a. Regarding judicial review, the statute at issue in that case provided: "There shall be judicial review of such denial

only in the judicial review of an order of deportation under section 1105a of this title (as in effect before October 1, 1996)." *Id.* at 418 (quoting 8 U.S.C. § 1255a(f)(4)(A)) (internal quotation marks and emphasis omitted).**[2]** As in the parallel provision of the SAW statute, the parenthetical was added by IIRIRA. *Id.* The court found that this addition was susceptible to two constructions in light of IIRIRA's abolition of 8 U.S.C. § 1105a: either the parenthetical functioned to "freeze in place the previously existing scope of judicial review," regardless of the section under which an appellate court exercised jurisdiction, or the parenthetical indicated that judicial review of a denial of legalization was to be available only in the context of judicial review arising "under" § 1105a itself. *Id.* at 418-19.**[3]** Finding that the latter interpretation would render the parenthetical surplusage, would conflict with a related statute, and would contravene the "well-settled presumption favoring interpretations of statutes that allow judicial review of administrative action," *id.* at 422 (quoting *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 496 (1991)) (internal quotation marks omitted), the court held that courts of appeals retain jurisdiction to review legalization decisions in the context of removal orders under 8 U.S.C. § 1252. *Id.* at 420-23.

**[4]** Though not all of *Orquera*'s reasoning applies to the SAW statute, interpreting IIRIRA to have implicitly abolished *all* judicial review of the denial of SAW application would clearly flout the presumption in favor of judicial review. Following the Supreme Court, we "presum[e] that Congress legislates with knowledge of our basic rules of statutory construction," including "our well-settled presumption favor-

---

**[2]** The only difference between this language and the comparable language from the SAW statute is that the latter makes SAW denials reviewable within judicial review of orders of exclusion as well as within review of orders of deportation.

**[3]** Despite the repeal of 8 U.S.C. § 1105a, review under that section still occurs in certain cases, pursuant to the IIRIRA's transitional rules. *See* IIRIRA § 309(c); *Kalaw v. INS*, 133 F.3d 1147, 1149-50 (9th Cir. 1997).

ing interpretations of statutes that allow judicial review of administrative action." *McNary*, 498 U.S. at 496; *see also INS v. St. Cyr*, 533 U.S. 289, 298 (2001) (invoking the "*strong* presumption" favoring judicial review of administrative action (emphasis added)). In light of this presumption and the lack of "clear and convincing evidence" of congressional intent to preclude judicial review of denials of SAW applicants, *Reno v. Catholic Social Services, Inc.*, 509 U.S. 43, 64 (1993), we find it "most unlikely that Congress intended to foreclose all forms of meaningful judicial review." *McNary*, 498 U.S. at 496. Accordingly, we interpret the SAW statute in conformity with our sister circuit's interpretation of nearly identical language in a similar statute, and we hold that IIRIRA preserved federal court jurisdiction to review a denial of SAW status within judicial review of an order of removal, regardless of the jurisdictional provision under which such review is carried out.

## III.   ANALYSIS

### A.   The BIA's Jurisdiction To Review the Denial of SAW Status

Perez claims first that the denial of his SAW application should have been reviewed as part of his *administrative* removal proceedings before the IJ and BIA. An administrative agency's interpretation of its statutory authority is reviewed de novo. *Bear Lake Watch, Inc. v. FERC*, 324 F.3d 1071, 1073 (9th Cir. 2003). We reject Perez's claim.

**[5]** The SAW statute provides two levels of review for denials of SAW legalization — one administrative (before an adjudicative body established for this purpose) and one judicial (in the federal appellate courts as part of judicial review of a removal order). 8 U.S.C. §§ 1160(e)(2)-(3). The statute expressly stipulates that these avenues for review are exclusive. 8 U.S.C. § 1160(e)(1). When the statute's provision for a single level of administrative review is read together with its

exclusivity provision, the plain language of the SAW statute forecloses BIA jurisdiction to review the denial of an application for SAW status.

Perez cites several provisions of the United States Code and Federal Rules of Appellate Procedure in support of a creative argument that the judicial review of a denial of SAW status cannot occur unless the denial has first been reviewed by the BIA as part of the removal proceedings. This argument fails. Only one of the provisions Perez cites offers any support for his theory: Subject to an exception not relevant to the instant case, "the court of appeals shall decide the petition [for review of a removal order] only on the administrative record on which *the order of removal* is based." 8 U.S.C. § 1252(b)(4)(A) (emphasis added). On its face, this provision suggests that the scope of a court's review of a removal order is limited to the record of the removal proceedings, and therefore that the record of a SAW proceeding cannot be considered unless it is incorporated into the record of the removal proceeding. However, "[i]t is a well-settled canon of statutory interpretation that specific provisions prevail over general provisions." *NLRB v. A-Plus Roofing, Inc.*, 39 F.3d 1410, 1415 (9th Cir. 1994). Congress made absolutely clear in the SAW statute that it specifically intended denials of SAW applications to be reviewable judicially as part of a review of a removal order, and to be reviewable administratively only by the administrative body established for this purpose. 8 U.S.C. § 1160(e). The general provision Perez cites cannot overcome Congress's specific directive in the SAW context.

**[6]** We therefore hold, in accordance with the plain language of the SAW statute, that the BIA lacks jurisdiction to review the denial of an application for SAW status.

## B.   The LAU's Denial of Perez's SAW Application

**[7]** Determinations contained in a denial of SAW status "shall be conclusive unless the applicant can establish abuse

of discretion or that the findings are directly contrary to clear and convincing facts contained in the record considered as a whole." 8 U.S.C. § 1160(e)(3)(B).

With respect to proof on an applicant's eligibility, the SAW statute provides:

> An alien can meet [his or her] burden of proof if the alien establishes that the alien has in fact performed [the requisite employment] by producing sufficient evidence to show the extent of that employment as a matter of just and reasonable inference. In such a case, the burden then shifts to the Attorney General to disprove the alien's evidence with a showing which negates the reasonableness of the inference to be drawn from the evidence.

8 U.S.C. § 1160(b)(3)(B)(iii).

**[8]** Once Perez came forward with the original Ramirez affidavit verifying that he had worked the requisite number of days of qualifying employment, Perez had clearly "produc[ed] sufficient evidence to show the extent of [his] employment as a matter of just and reasonable inference." At that point, the burden shifted to the government to "negate[ ] the reasonableness of the inference to be drawn from the evidence."

*1.   The government's evidence*

The first question is whether the government discharged its burden. In his second affidavit, Ramirez stated that "[a]ny document which purports to bear my signature in reference [to] any INS application should . . . be regarded as null and void." The statement of Santa Maria's Office Manager, Segura, also casts doubt on Perez's claim by implying that no one worked for Ramirez for very long.

Perez is correct that the Segura statement is not specific enough to carry the government's burden of disproving the evidence in Perez's original application. The fact that Ramirez employed few workers does not foreclose the possibility that Perez was one of them. Nor does Segura's observation about frequent turnover prove anything: Segura did not state specifically that *no one* worked for Ramirez for at least 90 days during the year in question, only that Ramirez's workers "were continuously being replaced by newly hired employees." There is no indication as to what Segura meant by "continuously" — if indeed Segura himself used this word at all.[4] Even if the word "continuously" is attributable to Segura, the statement is simply not specific enough to refute Perez's initial claim to employment.

**[9]** The second Ramirez affidavit, however, is quite damaging to Perez's application. Though Perez is correct in observing that part of Ramirez's statement can be taken to suggest by negative implication that he signed some valid documents for individuals he actually employed — Ramirez said, "I have not condoned the use of fraudulent documents, nor have I lent my signature to documents for *non-employees*" (emphasis added) — Ramirez's ultimate disavowal of SAW affidavits in his name is broad and unequivocal: "*Any* document which purports to bear my signature in reference [to] any INS application should therefore be regarded as null and void" (emphasis added). This statement under oath satisfies the government's burden to "negate[ ] the reasonableness of the inference to be drawn from the [applicant's] evidence." 8 U.S.C. § 1160(b)(3)(B)(iii).

## 2. *Perez's rebuttal evidence*

As an initial matter, we consider the nature of the burden an applicant must carry once the government has produced

---

[4]The quoted language comes from an INS document *summarizing* the Segura interview, not from Segura himself.

evidence to refute the applicant's initial showing. There are two possibilities: either the applicant must reestablish the predicate facts of the initial application, or the applicant must simply negate the inference of the government's showing, so that the evidence viewed as a whole is sufficient to support the applicant's claim "as a matter of just and reasonable inference." 8 U.S.C. § 1160(b)(3)(B)(iii). Though the statute does not specify what an applicant must show in order to rebut derogatory evidence submitted by the government, the statutory scheme appears to support the latter of the two possibilities we have identified. Where an applicant's responsive evidence rebuts the government's attempt to "negate[ ] the reasonableness of the inference to be drawn from the [applicant's initial] evidence," the applicant has restored a state of the evidence in which qualifying employment is shown by a preponderance of the evidence "as a matter of just and reasonable inference." *Id.* This showing is all that is required to sustain the applicant's initial burden, so it would frustrate the statute's basic design, as well as the statute's purpose of establishing a "broad amnesty program[ ] to allow existing undocumented aliens to emerge from the shadows," *McNary*, 498 U.S. at 482-83, to require a higher showing by the applicant in rebuttal. Moreover, it would seem inefficient and unnecessary to force an applicant for SAW status to reestablish facts already submitted to the administrative adjudicator. Therefore we conclude that, in order to overcome derogatory evidence put forth by the government, an applicant need not reestablish the predicate facts of his claim; instead, the applicant is required to provide only enough evidence so that the evidence before the adjudicator, viewed as a whole, is "sufficient . . . to show [qualifying] employment as a matter of just and reasonable inference." 8 U.S.C. § 1160(b)(3)(B)(iii).

The final question is whether the LAU abused its discretion in finding that the Ramirez letter did not meet Perez's burden to rebut the government's showing. Ordinarily, a supporting letter from an applicant's employer would easily suffice to rehabilitate an applicant's claim to SAW status in the face of

derogatory evidence. The employer is the person in the best position to verify the claims of the applicant, who may have difficulty finding other corroboration given the transient nature of the work. Unless there are specific indicia that an employer's letter or other communication is unreliable, refusal to accept corroboration by the applicant's employer would usually be an abuse of discretion.

**[10]** On the facts of this case, however, we cannot say that the LAU abused its discretion in refusing to credit the purported letter from Perez's employer. The Ramirez letter is highly suspect. First, the text of the letter is unnaturally general, containing no indication beyond the heading that the letter actually relates to Perez himself. The entire body of the letter discusses facts about Ramirez, not Perez. Second, the letter never spells out, or even suggests, that Perez worked for Ramirez. Instead, the letter merely concludes with the cryptic statement, "I understand that the purpose of this letter is to verify this individual's employment by me, in connection with an application for an immigrant visa." Finally, as the LAU observed, the letter did not explain or mention in any way Ramirez's previous affidavit that any employment documents bearing his name should be regarded as "null and void." It is not unreasonable to surmise that an individual who has disavowed all employment verification forms bearing his name would, when writing a letter intended to corroborate a claim on a form among those he disavowed, at least make some mention of the tension among the various assertions made in his name. Considering all of these factors together, we conclude that the LAU did not abuse its discretion in suspecting the credibility of the letter and finding that it did not overcome the adverse evidence submitted by the government.[5]

---

[5]The LAU also seems to have faulted the letter for failing to address the statements of Segura the Office Manager. Had this been the only basis for discounting the value of the letter, we would find an abuse of discretion, as there is no reason to have expected Ramirez to address a statement that is not actually inconsistent with Perez's employment claim, or even to assume that Ramirez was aware of the Segura statement at all. However, the LAU's faulty reliance on the Segura statement does not undermine its conclusion, as there was ample reason not to credit the Ramirez letter.

## IV.   CONCLUSION

We hold that IIRIRA preserved federal court jurisdiction to review a denial of SAW status within judicial review of an order of removal, regardless of the jurisdictional provision under which such review is carried out. Under 8 U.S.C. § 1160(e), the IJ and BIA are foreclosed from reviewing a denial of SAW status. On the merits, we conclude that the LAU did not abuse its discretion in denying Perez's SAW application.

**PETITION DENIED.**