# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOSE CATALINO GUZMAN-ANDRADE,
           *Petitioner,*

v.

ALBERTO GONZALES,* Attorney
General,

           *Respondent.*

No. 03-70765

Agency No.
A90-840-073

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
September 8, 2004—San Francisco, California

Filed May 19, 2005

Before: Betty B. Fletcher, Edward Leavy, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Leavy;
Concurrence by Judge Berzon

---

*Alberto Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

5417

**COUNSEL**

Roger S. Green, San Francisco, California, for the petitioner.

Anthony P. Nicastro and John Hogan, Washington, D.C., for the respondent.

# OPINION

LEAVY, Circuit Judge:

Jose Catalino Guzman-Andrade petitions for review of a final removal order of the Board of Immigration Appeals (BIA). Through his petition he seeks review of a decision of the Legalization Appeals Unit (LAU)[1] affirming the Immigration and Naturalization Service's (INS)[2] denial of his application for adjustment of status to that of a permanent resident under a legalization program established by the Immigration Reform and Control Act of 1986 (IRCA), 8 U.S.C. § 1255a. This appeal raises an issue of first impression in this circuit: do aliens denied temporary or permanent resident status by the INS under the § 1255a legalization program retain the right to judicial review of that denial after the 1996 amendments to IRCA by section 308(g)(2)(B) of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), Pub. L. No. 104-208, div. C, § 308(g)(2)(B), 110 Stat. 3009-546, 3009-622 (1996)? We conclude that we continue to have jurisdiction, when reviewing the final removal order of an alien who would have been placed in deportation proceedings prior to passage of IIRIRA, to review the denial of a § 1255a legalization application. Moreover, we conclude that the LAU abused its discretion when it affirmed the denial of Guzman-Andrade's application for permanent resident status. Therefore, we grant the petition for review.

---

[1]The LAU is now referred to as the Administrative Appeals Unit (AAU). *See* 8 C.F.R. § 245a.2(p) (2005). Because the appeals unit was known as the LAU while it considered Guzman-Andrade's appeals, reference in this opinion will be to the LAU.

[2]As of March 1, 2003, the INS was abolished and its functions were transferred to the Department of Homeland Security. *See* 6 U.S.C.A. § 542 (West Supp. 2004). Because the agency was known as the INS while it considered Guzman-Andrade's application, reference in this opinion will be to the INS.

## STANDARDS OF REVIEW

In the first instance, we must determine whether we have jurisdiction to review the merits of the denial of Guzman-Andrade's legalization application. *See Molina-Camacho v. Ashcroft*, 393 F.3d 937, 939 (9th Cir. 2004). "We determine our own jurisdiction de novo." *Luu-Le v. INS*, 224 F.3d 911, 914 (9th Cir 2000).

Judicial review of the denial of a legalization application:

> shall be based solely upon the administrative record established at the time of the review by the appellate authority and the findings of fact and determinations contained in such record shall be conclusive unless the applicant can establish abuse of discretion or that the findings are directly contrary to clear and convincing facts contained in the record considered as a whole.

8 U.S.C. § 1255a(f)(4)(B) (2000).

## JURISDICTION

### A.   Statutory Background

IRCA created two broad amnesty programs for aliens: one for "special agricultural workers" (SAW program), *see* 8 U.S.C. § 1160, and a second for aliens who continuously and unlawfully resided in this country since January 1, 1982. *See* 8 U.S.C. § 1255a; *see also Ortiz v. Meissner*, 179 F.3d 718, 719-20 (9th Cir. 1999) (describing these two programs). With one exception, discussed below, the judicial review provisions governing each program are "materially identical." *Ortiz*, 179 F.3d at 719 n.1. At issue in this appeal are the judicial review provisions governing legalization applications made under § 1255a. *See* 8 U.S.C. § 1255a(f).

Subsection 1255a(f) provides for exclusive administrative and judicial review of determinations made respecting these applications: "[T]here shall be no administrative or judicial review of a determination respecting an application for adjustment of status under this section except in accordance with this subsection." *Id.* § 1255a(f)(1). We have described this limitation as IRCA's "exclusive review scheme." *Proyecto San Pablo v. INS*, 189 F.3d 1130, 1136 (9th Cir. 1999). Subsection 1255a(f)(3) establishes a single level of administrative appellate review, provided by the LAU. 8 U.S.C. § 1255a(f)(3)(A); 8 C.F.R. § 245a.2(p). Section 1255a(f)(4)(A) governs judicial review of individual legalization denials. From the time of IRCA's enactment in 1986 until its 1996 amendment by IIRIRA, § 1255a(f)(4)(A) provided:

> Limitation to review of deportation. There shall be judicial review of such a denial only in the judicial review **of an order of deportation under section 1105a of this title.**

8 U.S.C. § 1255a(f)(4)(A) (1994) (prior to IIRIRA amendment) (emphasis added).

While Congress provided for judicial review of a SAW program legalization denial in both deportation and exclusion proceedings, *id.* § 1160(e)(3)(A), under § 1255a(f), courts of appeal had jurisdiction to review amnesty denials only through review of a final order of *deportation. See, e.g.*, *Noriega-Sandoval v. INS*, 911 F.2d 258, 261 (9th Cir. 1990) (per curiam). If the alien was in an *exclusion* proceeding, the statute precluded judicial review of the denial of the legalization application. *See Espinoza-Gutierrez v. Smith*, 94 F.3d 1270, 1278 (9th Cir 1996).[3] The deportation hearing was the

---

[3]Section 1160 applied to "judicial review of an order of exclusion *or* deportation," 8 U.S.C. § 1160(e)(3)(A) (emphasis added), whereas the judicial review provision in § 1255a applied only to "judicial review of an order of deportation." *Id.* § 1255a(f)(4)(A).

usual means of proceeding against an alien already physically in the United States, and the exclusion hearing was the usual means of proceeding against an alien outside the United States seeking admission. *See Landon v. Plasencia*, 459 U.S. 21, 25 (1982); *see also Ramirez-Durazo v. INS*, 794 F.2d 491, 495 (9th Cir. 1986).

In 1996, with the enactment of IIRIRA, Congress amended numerous sections of the Immigration and Naturalization Act, 8 U.S.C. § 1101 *et seq*. IIRIRA merged deportation and exclusion proceedings into a single new process called "removal proceedings." *See Romero-Torres v. Ashcroft*, 327 F.3d 887, 889 (9th Cir. 2003). All aliens are now subject to removal proceedings, 8 U.S.C. § 1229a, but an alien in the United States who has been admitted is subject to "deportability grounds," *see id.* § 1227(a), while an alien who has not been admitted, regardless of his or her location, is subject to "inadmissibility grounds." *See id.* § 1182(a). The new grounds for "inadmissibility" are broader than those used in the former exclusion proceedings, because they include additional health-related, criminal, and security grounds. *See Lin Guo Xi v. INS*, 298 F.3d 832, 838 (9th Cir. 2002). *Compare* 8 U.S.C. § 1182 (1994), *with* 8 U.S.C. § 1182 (2000).

IIRIRA also repealed § 1105a and replaced it with § 1252, instituting new, and more restrictive, judicial review provisions governing review of orders of removal. *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 475 (1999). Significantly, in IIRIRA, Congress left the reference to the repealed § 1105a in the exclusive review provision of § 1255a, and added the phrase emphasized below:

> Limitation to review of deportation. There shall be judicial review of such denial only in the judicial review of an order of deportation under section 1105a of this title **(as in effect before October 1, 1996).**

8 U.S.C. § 1255a(f)(4)(A) (2000) (emphasis added). The identical parenthetical was added to the judicial review provision governing the SAW program. *See id.* § 1160(e)(3)(A); *see also* IIRIRA § 306(g)(2)(B), 110 Stat. at 3009-622.

B. *Analysis*

Because Congress added the parenthetical language to § 1255a(f)(4)(A) at the same time it repealed § 1105a, both parties to this appeal argue that Congress intended to preserve judicial review of amnesty denials under that section as it existed before IIRIRA's amendments went into full effect on April 1, 1997. The parties' agreement, however, cannot create subject matter jurisdiction nor waive its absence. *See United States v. Ceja-Prado*, 333 F.3d 1046, 1049 (9th Cir. 2003). We are obliged independently to assess whether we have jurisdiction to review the denial of Guzman-Andrade's legalization application.[4]

[1] In conducting this analysis we are substantially aided by our recent decision in *Perez-Martin v. Ashcroft*, 394 F.3d 752 (9th Cir. 2005), in which we concluded that "IIRIRA preserved federal court jurisdiction to review a denial of SAW status within judicial review of an order of removal. . . ." *Id.* at 757. As discussed above, the only difference between the judicial review provisions governing the SAW program and those governing the § 1255a legalization program, is that judicial review of a SAW legalization denial is available to aliens subject to either deportation or exclusion proceedings, whereas judicial review of § 1255a denial requires that the alien be in deportation proceedings.

---

[4]We have repeatedly assumed without necessarily deciding that the amended § 1255a provides a jurisdictional basis for ongoing review of individual amnesty denials. *See, e.g.*, *Immigrant Assistance Project v. INS*, 306 F.3d 842, 862 (9th Cir. 2002); *Proyecto San Pablo*, 189 F.3d at 1136; *Ortiz*, 179 F.3d at 719-22 & n.1.

In *Perez-Martin*, we emphasized the similarities between § 1160 and § 1255a in relying on a Fourth Circuit decision that had analyzed the alternative interpretations of the "as in effect" language in § 1255a(f)(4)(A) to interpret the same language in § 1160(e)(3)(A). *See* 394 F.3d at 756-57 (citing *Orquera v. Ashcroft*, 357 F.3d 413 (4th Cir. 2003)). Because of the distinction discussed above, however, *Perez-Martin* had no need to analyze whether the petitioner in that case would have been deported or excluded prior to IIRIRA. Unlike § 1160(e)(3)(A), in the context of § 1255a(f)(4)(A), this distinction is determinative of our jurisdiction.

**[2]** In this case, there is no question that Guzman-Andrade, because of his temporary resident status, was lawfully within the United States at the time he filed his legalization application, and would therefore have been subject to deportation, rather than exclusion, proceedings prior to IIRIRA. We therefore have jurisdiction under § 1255a(f)(4)(A) to review his legalization application.

## *LEGALIZATION APPLICATION*

### A. *Facts and Procedural History*

The legalization program established by 8 U.S.C. § 1255a grants, through a two-step process, legal status to aliens who entered the United States prior to January 1, 1982, and have resided continuously in the United States in an unlawful status since that date. Among other restrictions, aliens who have been convicted in the United States of any felony or of three or more misdemeanors are ineligible for legal status. *See* 8 C.F.R. §§ 245a.2(c)(1), 245a.3(c)(1). The first step in the legalization process is the adjustment of status of the alien to that of an alien lawfully admitted for temporary residence. *See id.* § 245a.2. Following a period of 18 months in such status, the alien can take the second step and apply for adjustment of status to that of an alien lawfully admitted for permanent residence. *See id.* § 245a.3(a)(1).

Guzman-Andrade illegally entered the United States in November 1981. In 1987, he began the two-step process of legalization under 8 U.S.C. § 1255a by applying for temporary residence status. On his application, Guzman-Andrade indicated that he had been arrested. The INS granted Guzman-Andrade temporary residence status on October 16, 1987.

On September 12, 1989, Guzman-Andrade took the second step toward legalization by applying for adjustment of status from temporary to permanent resident. On his application, he indicated, by checking a box, that, since becoming a temporary resident, he had been "arrested, convicted, or confined."

The INS sent Guzman-Andrade a notice dated July 24, 1991, requesting information regarding this "arrest, conviction or confinement." On September 13, 1991, Guzman-Andrade provided the requested information. The documents submitted showed that there had been no additional *conviction* after Guzman-Andrade received temporary protected status, but that Guzman-Andrade had been *confined* for ten days for a pre-temporary protected status conviction of driving with a revoked license.

On November 14, 1991, the INS notified Guzman-Andrade of its intent to terminate his temporary resident status under 8 C.F.R. § 245a.2(u)(1)(iii)[5] because "[s]ecurity checks conducted by the Service have revealed a violation of law which may make you ineligible for temporary residence if a conviction occurred." The INS asked Guzman-Andrade to provide additional information regarding his criminal record.

Over the following two years, Guzman-Andrade diligently provided the INS with every available document pertaining to his criminal record. In those instances where the records were

---

[5]This section allows the INS to terminate the temporary protected status of an alien who has been convicted of any felony or three or more misdemeanors. *See* 8 C.F.R. § 245a.2(u)(1)(iii).

no longer maintained by the relevant jurisdiction, Guzman-Andrade provided evidence of the jurisdiction's record maintenance policy and the best available alternative documentation. The evidence submitted demonstrated that Guzman-Andrade had had three misdemeanor convictions, two of which had been expunged.

However, on November 30, 1992, the INS notified Guzman-Andrade that it had terminated his temporary resident status because he had not submitted evidence showing that he was cleared of certain charges or that the charges against him were in error and, therefore, failed to meet his burden of proof to establish eligibility for temporary resident status.

The notice advised Guzman-Andrade of his right to appeal:

> You may appeal this decision to the Legalization Appeals Unit by completing the enclosed Form I-694, NOTICE OF APPEAL, and filing it with this office together with a $50.00 fee in the form of a money order, cashier's check, or bank draft. Your NOTICE OF APPEAL must be filed in triplicate *within 30 days of this notice*. Additional evidence, a brief, or other written statement in support of your appeal may be submitted with the NOTICE OF APPEAL. If no appeal is filed within the time allowed, this decision is final.

(Emphasis added).

Guzman-Andrade's attorney mailed the Notice of Appeal on December 23, 1992, within the 30-day filing period, and enclosed a personal check for $50.00. The INS stamped the notice "received" on December 28, 1992, but returned the notice because it did not accept personal checks. The INS told Guzman-Andrade to resubmit the Notice of Appeal without mentioning the passing of the deadline, although Guzman-

Andrade would not have received the letter until after the deadline had run. After resubmission, the appeal was identically stamped "received" on January 8, 1993, but treated as filed on January 12, 1993.

Between January 8, 1993, and April 24, 1995, over a period of two and one-half years, Guzman-Andrade's attorney inquired of the LAU at least three times regarding the status of his appeal, each time referencing the appeal as filed on December 28, 1992. The LAU did not respond to his inquiries, and on April 24, 1995, dismissed the appeal on the ground that it was untimely filed.

Meanwhile, on January 22, 1993, the INS denied Guzman-Andrade's application for permanent resident status. This denial was based on the INS determination that Guzman-Andrade's criminal history made him statutorily ineligible for permanent resident status.

On February 18, 1993, Guzman-Andrade's attorney filed a Notice of Appeal from this decision. She enclosed a $50.00 money order which had been mistakenly made out to her, but which she had attempted to correct. The INS returned the Notice of Appeal and asked for a substitute money order. According to INS records, the appeal was filed on March 4, 1993, after the 30-day filing deadline. However, the LAU dismissed this appeal on April 27, 1995, not as untimely filed, but on the merits because Guzman-Andrade "failed to provide documents necessary for the adjudication of the application." Alternatively, the LAU held that Guzman-Andrade was ineligible for adjustment to permanent resident status under 8 C.F.R. § 245a.3(c)(5) because his "temporary resident status was terminated on November 30, 1992 and . . . the untimely appeal from that decision was dismissed."

Guzman-Andrade filed a motion for reconsideration of the LAU's decision, The INS' California Service Center informed Guzman-Andrade that, according to its regulations, the dis-

missal of his appeal by the LAU constituted the one appellate decision to which he was entitled. The Service Center forwarded the file and request to reopen to the LAU, which, on November 9, 1996, rejected the requests, informing Guzman-Andrade that further review of the case could only be had through "judicial review of an order of exclusion or deportation."

On February 9, 1999, the INS issued a Notice to Appear charging Guzman-Andrade with being removable from the United States. Subsequently, an Immigration Judge ordered Guzman-Andrade removed to El Savlador. On Janaury 22, 2003, the BIA dismissed Guzman-Andrade's appeal of the removal order, concluding that it lacked jurisdiction to review the denial of his legalization application. Guzman-Andrade timely petitioned for review of the BIA's order.

B.  *Analysis*

The LAU's dismissal of Guzman-Andrade's appeal of the denial of his legalization application was based on alternate grounds: (1) Guzman-Andrade failed to cooperate in providing "verifying information necessary for the adjudication of [his] application," and (2) his temporary resident status was terminated on November 30, 1992, and "the untimely appeal from that [termination] was dismissed."

[3] 8 C.F.R. § 245a.3(g)(5) provides that:

> Declarations by an applicant that he . . . has not had a criminal record are subject to a verification of facts by the Service. The applicant must agree to fully cooperate in the verification process. Failure to assist the Service in verifying information necessary for proper adjudication may result in denial of the application.

[4] Guzman-Andrade never stated that he did not have a criminal record. To the contrary, he admitted in both his

applications for temporary resident status and for permanent resident status that he had been arrested, convicted or confined and attached documentary information. When the INS requested additional information, Guzman-Andrade provided documentation on each item requested to the extent it was available to him. Additionally, he provided evidence showing that relevant records had been destroyed. Thus, the LAU's finding that Guzman-Andrade failed to provide the necessary documents was an abuse of discretion and contrary to the record as a whole. Also, it was clear from the record that Guzman-Andrade did *not* have an additional conviction after the INS granted him temporary resident status.

**[5]** The LAU's alternate ground for dismissal, that Guzman-Andrade's temporary resident status had been terminated, is also contrary to the record as a whole. Guzman-Andrade had temporary residence status at the time he applied for permanent resident status. That status was not finally revoked until days before the legalization denial. Moreover, the LAU's dismissal of the appeal from the termination of his temporary residence status on grounds of untimeliness was an abuse of discretion. Guzman-Andrade was not told that failure to include the proper form of payment would invalidate the notice of appeal.[6] In fact, the LAU did not apply this rule in Guzman-Andrade's appeal of the denial of his application for permanent resident status. The payment submitted by Guzman-Andrade was in the form of a check by a lawyer. The general procedure followed by courts is to permit individuals to perfect appeals by filing the proper fees after the filing deadline if the appeal is otherwise properly filed. *Cf. Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir. 1998) (per curiam) (holding that a properly filed habeas petition should be deemed filed at the time of filing, regardless of when the fee is perfected).

---

[6]Nor was Guzman-Andrade given an opportunity to timely correct the deficiency, although he filed his Notice of Appeal in sufficient time to have permitted such an opportunity.

**[6]** Because we conclude that we have jurisdiction and that the LAU abused its discretion, we grant the petition for review and vacate the order of removal. We remand the application for adjustment of status to the LAU for further consideration. It follows from our analysis above that, absent *substantive* deficiencies not previously discussed by the LAU, Guzman-Andrade's application for adjustment of status must be granted.

PETITION GRANTED.

---

BERZON, Circuit Judge, concurring:

I agree with every sentence of the majority opinion except the penultimate one. The statutory structure is peculiar, as it allows judicial review of the Legalization Appeals Unit's (LAU) legalization decision only on petition for review from a decision of the Board of Immigration Appeals (BIA). *See* 8 U.S.C. § 1255a(f)(4)(A) ("There shall be judicial review of such a denial only in the judicial review of an order of deportation . . . ."). As the caption of the majority opinion indicates, this is such a petition for review. I therefore have a hard time seeing how we can "remand" to the LAU, as the case did not come to us from the LAU. Nor can we remand to the BIA with instructions to remand to the LAU, for the former body has no authority over the latter. *See, e.g.*, *In re Singh*, 21 I. & N. Dec. 427, 428 (BIA 1996).

I would simply decide that Guzman-Andrade's legalization application was erroneously denied, and that further proceedings before the LAU are therefore warranted. In other words, I would grant Guzman-Andrade's petition for review and allow *him* to go back to the LAU (or its successor), which, as the majority concludes, will be obligated to grant his application absent some substantive reason for rejection that has not yet surfaced.