FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| **YEWHALASHET ABEBE**,<br><br>Petitioner,<br><br>v.<br><br>**MICHAEL B. MUKASEY, Attorney General**,<br><br>Respondent. | No. 05-76201<br><br>Agency No. A26-810-941<br><br>**OPINION** |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 25, 2008
San Francisco, California

Filed

Before: **KOZINSKI**, Chief Judge, **PREGERSON**, **KLEINFELD**, **THOMAS**, **SILVERMAN**, **GOULD**, **TALLMAN**, **CLIFTON**, **CALLAHAN**, **BEA** and **N.R. SMITH**, Circuit Judges.

**PER CURIAM**:

**1.** Petitioner became a lawful permanent resident in 1984 and, in 1992, pled guilty to lewd and lascivious conduct upon a child. Cal. Penal Code § 288(a). INS commenced removal proceedings on the ground that he was deportable as having

committed an "aggravated felony," 8 U.S.C. § 1227(a)(2)(A)(iii)—"sexual abuse

of a minor," id. § 1101(a)(43)(A). The Immigration Judge (IJ) denied petitioner's

asylum, withholding of removal and Convention Against Torture claims, and

found petitioner ineligible for a discretionary waiver of deportation under former

Immigration and Nationality Act § 212(c), 8 U.S.C. § 1182(c) (repealed 1996).[1]

On appeal to the Board of Immigration Appeals (BIA), petitioner argued that he's

eligible for section 212(c) relief. The BIA affirmed, and Abebe petitions for

review.

2. Petitioner argues that, by finding him ineligible for section 212(c) relief,

the BIA denied him equal protection. Relying on Komarenko v. INS, 35 F.3d 432,

434–35 (9th Cir. 1994), the three-judge panel held that petitioner isn't eligible for

section 212(c) relief. Abebe v. Gonzales, 493 F.3d 1092, 1104–05 (9th Cir. 2007),

vacated, 514 F.3d 909 (9th Cir. 2008). Under Komarenko, 35 F.3d at 434–35, a

deportable alien can be eligible for section 212(c) relief only if his grounds for

---

[1] Even though section 212(c) was repealed by the Illegal Immigration
Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. 104-208, the
Supreme Court held that this repeal can't be applied retroactively to aliens, such as
petitioner, who pled guilty to deportable crimes before IIRIRA took effect. INS v.
St. Cyr, 533 U.S. 289, 326 (2001).

deportation are substantially identical to a ground for inadmissibility.[2]  Here,

petitioner is deportable for committing an "aggravated felony," 8 U.S.C.

§ 1227(a)(2)(A)(iii), which the panel held isn't substantially identical to the most

analogous ground for inadmissibility—committing a "crime involving moral

turpitude," id. § 1182(a)(2)(A)(i)(I).  Abebe, 493 F.3d at 1104–05.  Petitioner

claims that the rationale of Komarenko can't be squared with that of Tapia-Acuna

v. INS, 640 F.2d 223, 225 (9th Cir. 1981).  He therefore asks us to overrule

Komarenko, and hold that a deportable alien can only be eligible for section 212(c)

relief if his conviction is substantially identical to a ground for inadmissibility.  See

Abebe, 493 F.3d at 1106 (Berzon, J., concurring).

Under its plain language, section 212(c) gives the Attorney General

discretion to grant lawful permanent residents relief only from

inadmissibility[3]—not deportation.  See 8 U.S.C. § 1182(c) (repealed 1996).  Tapia-

---

[2]  Inadmissibility (or "exclusion" under pre-IIRIRA law) applies to an alien outside the United States who is not allowed to enter, 8 U.S.C. § 1182(a), whereas deportation applies to an alien who is already in the United States and is ejected, id. § 1227.  See Guzman-Andrade v. Gonzales, 407 F.3d 1073, 1076 (9th Cir. 2005).  Under IIRIRA, both inadmissible and deportable aliens go through the same process, called "removal proceedings."  Id. (citing Romero-Torres v. Ashcroft, 327 F.3d 887, 889 (9th Cir. 2003)).

[3]  IIRIRA changes somewhat the nomenclature applicable to immigration cases.  What used to be "excludability" is now "inadmissibility"; what used to be

(continued...)

Acuna, though, followed Francis v. INS, 532 F.2d 268, 273 (2d Cir. 1976), and held that equal protection required us to extend section 212(c) relief to aliens facing deportation—if such aliens would have been eligible for section 212(c) relief from inadmissibility, had they left the United States and attempted to reenter. Tapia-Acuna, 640 F.2d at 225. In following Francis, Tapia-Acuna reasoned that there is no rational basis for granting additional immigration relief to aliens who temporarily leave the United States and try to reenter (i.e., aliens facing inadmissibility), and not to aliens who remain in the United States (i.e., aliens facing deportation). Tapia-Acuna, 640 F.2d at 225. According to Francis and Tapia-Acuna, it is wholly irrational for Congress to give any advantage to aliens outside the United States that it denies to similarly situated aliens within the United States.

We are not convinced that Francis and Tapia-Acuna accorded sufficient deference to this complex legislative scheme, and therefore reconsider this question, as we are authorized to do en banc. We note at the outset that the statute doesn't discriminate against a discrete and insular minority or trench on any fundamental rights, and therefore we apply a standard of bare rationality. United

_____

[3](...continued)
"deportation" is now "removal." We use these terms interchangeably.

States v. Barajas-Guillen, 632 F.2d 749, 752 (9th Cir. 1980) (quoting Alvarez v.

Dist. Dir. of the U.S. INS, 539 F.2d 1220, 1224 (9th Cir. 1976)).  Congress has

particularly broad and sweeping powers when it comes to immigration, and is

therefore entitled to an additional measure of deference when it legislates as to

admission, exclusion, removal, naturalization or other matters pertaining to aliens.

See Kleindienst v. Mandel, 408 U.S. 753, 769–70 (1972); Boutilier v. INS, 387

U.S. 118, 123–24 (1967); Flemming v. Nestor, 363 U.S. 603, 616 (1960).  Our

task, therefore, is to determine, not whether the statutory scheme makes sense to

us, but whether we can conceive of a rational reason Congress may have had in

adopting it.[4]

    We can:  Congress could have limited section 212(c) relief to aliens seeking

to enter the country from abroad in order to "create[] an incentive for deportable

aliens to leave the country."  Requena-Rodriguez v. Pasquarell, 190 F.3d 299, 309

(5th Cir. 1999) (quoting LaGuerre v. Reno, 164 F.3d 1035, 1041 (7th Cir. 1998));

---

[4]  In making this determination, we do not look to the actual rationale for the legislation, as it is often very difficult or impossible to determine what a collective body, such as Congress, has in mind.  The task would be particularly difficult in a case like ours where the statutory scheme now in force is the product of repeated layers of congressional enactments and judicial interpretations, so it is quite likely that no one anticipated the existing Byzantine structure.  Our inquiry therefore focuses on whether a hypothetically rational Congress could have adopted the statutory scheme, not on whether Congress actually adopted the statute with that particular reason in mind.

see DeSousa v. Reno, 190 F.3d 175, 185 (3d Cir. 1999).  A deportable alien who wishes to obtain section 212(c) relief will know that he can't obtain such relief so long as he remains in the United States; if he departs the United States, however, he could become eligible for such relief.  By encouraging such self-deportation, the government could save resources it would otherwise devote to arresting and deporting these aliens.  See Jurado-Gutierrez v. Greene, 190 F.3d 1135, 1153 (10th Cir. 1999), abrogated in part by INS v. St. Cyr, 533 U.S. 289, 326 (2001).  Saving scarce resources that would otherwise be paid for by taxpayers is certainly a legitimate congressional objective.

Our dissenting colleagues argue that the reason we attribute to Congress is not so rational after all because aliens who are "excludable yet potentially eligible for a section 212(c) waiver . . . [are] generally allowed to enter and to apply for waiver from within the country," and so the government will wind up having to deport those aliens anyway, if they are denied 212(c) relief.  Dissent at 6.  But the fact that the government may choose, as a matter of grace, to admit aliens who seem very likely to be granted 212(c) relief does not mean that it won't exclude those it believes are less likely to obtain such relief.  The rationality of the statute

lies in giving that discretion, on a case by case basis, to an agency that can assess the likelihood of the alien's success and the cost of his removal.[5]

The dissent makes a similar error when it argues that it is inconsistent with the statutory scheme to assume "that a rational Congress would want these persons to leave the country."  Dissent at 6.  The supposed irrationality here, as we understand it, would be in having people leave the country only to be re-admitted after they are granted relief.

The dissent overlooks the fact that not all those who apply for relief ultimately receive it; many, perhaps most, will not.  And as to those, it makes perfect sense to want them to be outside our borders when they get the bad news.  At that point, they cannot rely on inertia to remain in the country despite the adverse decision, and force the government to chase them down and pay for their deportation.  As Judge Posner noted in LaGuerre v. Reno, 164 F.3d 1035, 1041 (7th Cir. 1998), "[t]o induce their voluntary departure, a little carrot is dangled before them, consisting of the opportunity to seek a waiver should they seek to return to the country and by doing so trigger exclusion proceedings."  To what extent this will actually save the government resources is something we won't

---

[5] The dissent also claims that this will somehow "increase the number of removal proceedings, which would, in turn, spend *more* government resources," dissent at 6, but it doesn't explain how or why this would be the case.

know until we try it, but it is hardly irrational to presume that a significant number of aliens may decide to depart in order to get a shot at 212(c) relief. Congress certainly is entitled to experiment, without interference from the judiciary.[6] For much the same reason, the dissent is mistaken in arguing that we've undermined the validity of 8 C.F.R. § 1212.3(f)(5) under the rationale of INS v. St. Cyr, 533 U.S. 289 (2001). Dissent at 7-8. The INS may certainly choose to treat different classes of aliens the same, even though the statute does not, and nothing in St. Cyr prevents it from doing so. Of course, our ruling might cause the government to reconsider the regulation, and eventually repeal it as no longer necessary. But that's up to the government; nothing we say today casts any doubt on the regulation.

We thus overrule Tapia-Acuna's holding that there's no rational basis for providing section 212(c) relief from inadmissibility, but not deportation. The BIA

---

[6]The dissent's citation to Stanton v. Stanton, 421 U.S. 7, 14 (1975), dissent at 5, is misplaced. This case involved sex discrimination, and distinctions based on sex have been subjected to far more searching scrutiny for the last 4 decades or so. See also Reed v. Reed, 404 U.S. 71 (1971). Here we are not dealing with sex discrimination, or discrimination based on any other suspect category. And we're dealing with an area where federal power is at its zenith; indeed, the Supreme Court has instructed us that we must exercise "special judicial deference to congressional policy choices in the immigration context." Fiallo v. Bell, 430 U.S. 787, 793 (1977) (footnote omitted). It would thus be a rare case, indeed, where we could find irrationality in a congressional decision to distinguish among classes of aliens (other than along suspect lines).

therefore didn't violate petitioner's right to equal protection by finding him ineligible for section 212(c) relief from deportation. Since petitioner was not eligible for section 212(c) relief in the first place, the BIA could not have committed an equal protection violation by denying him such relief. We affirm the BIA's section 212(c) ruling, and have no reason to reconsider Komarenko. Indeed, under our ruling today, Komarenko becomes a dead letter, as its only purpose was to fill a gap created by Tapia-Acuna.

**3.** Petitioner also argues that the IJ erred by denying his claim for withholding of removal. But petitioner didn't raise a withholding of removal claim in his brief before the BIA, and the BIA was therefore not required to consider it. See, e.g., Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 535 n.11 (3d Cir. 2007) (issues raised in the notice of appeal but not argued in appellant's principal brief are deemed abandoned). When a petitioner files no brief and relies entirely on the notice of appeal to make an immigration argument, as he may do before the BIA, see 8 C.F.R. § 1003.38(f), then the notice of appeal serves in lieu of a brief, and he will be deemed to have exhausted all issues raised therein. But when a petitioner does file a brief, the BIA is entitled to look to the brief for an explication of the issues that petitioner is presenting to have reviewed. Petitioner

will therefore be deemed to have exhausted only those issues he raised and argued in his brief before the BIA. Here, petitioner did file a brief, which did not raise the withholding of removal issue. He therefore didn't exhaust that claim, and we lack jurisdiction to review it. Barron v. Ashcroft, 358 F.3d 674, 677 (9th Cir. 2004) (citing 8 U.S.C. § 1252(d)(1)). To the extent Ladha v. INS, 215 F.3d 889, 903 (9th Cir. 2000), is to the contrary, it is overruled.

**PETITION DENIED IN PART and DISMISSED IN PART.**[7]

---

[7] For the reasons given in the three-judge panel opinion, the BIA didn't erroneously or inconsistently apply 8 U.S.C. § 1182(c) (repealed 1996), or 8 C.F.R. § 1213(f). Abebe, 493 F.3d at 1101–04. Likewise, we reject petitioner's due process retroactivity argument. Id. at 1105.

**Counsel**

Robert B. Jobe and Fatma Marouf, Law Office of Robert B. Jobe, San Francisco, California, for petitioner.

Thomas H. Dupree, Jr., Deputy Assistant Attorney General; Peter D. Keisler, Assistant Attorney General; M. Jocelyn Lopez Wright, Assistant Director, Office of Immigration Litigation; Song E. Park, Office of Immigration Litigation, Washington, DC, for respondent.