363 F.3d 891
 In re Bruce Wayne MORRIS,
Bruce Wayne Morris, Petitioner,
v.
United States District Court for the Eastern District of California (Sacramento), Respondent,
Jeanne S. Woodford, Warden, Real Party in Interest.
 No. 04-70667.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 24, 2004.
 Filed April 6, 2004.
 
 Marianne D. Bachers, San Francisco, California, and Tony Tamburello, Tamburello & Hanlon, San Francisco, CA, for the petitioner.
 Ward A. Campbell, Supervising Deputy Attorney General, and Susan Rankin Bunting, Deputy Attorney General, State of California, Sacramento, CA, for the real party in interest.
 Petition for Writ of Mandamus. D.C. No. CV-92-00483-EJB/GGH.
 Before FERGUSON, GRABER, and W. FLETCHER, Circuit Judges.
 PER CURIAM:
 
 
 1
 This case is before us on a petition for a writ of mandamus filed by Petitioner Bruce Wayne Morris. In considering a mandamus petition, we review a district court's actions for clear error. Cordoza v. Pac. States Steel Corp., 320 F.3d 989, 998 (9th Cir.2003). Five factors guide our determination whether to grant a mandamus petition:
 
 
 2
 (1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires. (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal.... (3) The district court's order is clearly erroneous as a matter of law. (4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules. (5) The district court's order raises new and important problems, or issues of law of first impression.
 
 
 3
 Bauman v. United States Dist. Court, 557 F.2d 650, 654-55 (9th Cir.1977) (citations omitted).
 
 
 4
 The district court has yet to make any definitive ruling, clearly erroneous or otherwise, with respect to Petitioner's request to amend his first amended habeas petition to include Brady[1] and Mooney[2] claims based on newly discovered evidence. We therefore deny Petitioner's petition for a writ of mandamus.
 
 PROCEDURAL BACKGROUND
 
 5
 In order to place the present issues in context, we recite the recent procedural history of this case.[3]
 
 
 6
 On November 16, 2001, we remanded Petitioner's habeas petition to the district court with instructions concerning a new penalty-phase hearing in the state court. We left undisturbed our previous remand for an evidentiary hearing to address Petitioner's guilt-phase claims of ineffective assistance of counsel and incompetence to aid and assist counsel. Morris, 273 F.3d at 843. On January 29, 2003, the district court made its prehearing scheduling order, setting the evidentiary hearing on Petitioner's remaining guilt-phase claims for March 22, 2004, and ordering discovery to be completed by November 21, 2003. Because of a series of delays, discovery went well beyond the November 21 deadline. Petitioner filed a motion on January 15, 2004, to compel discovery of several documents, including "complete disclosure of the trial prosecutor's files."
 
 
 7
 At the final pretrial conference on January 29, 2004, Respondent (below) Warden Jeanne S. Woodford produced the trial prosecutor's files and other documents relating to two prosecution witnesses. During the conference, Petitioner asked the district court to expand the scope of the evidentiary hearing to address two claims on which the district court had properly granted summary judgment. The district court took the motion under submission and, in a February 11 order, deferred ruling on the motion to expand the evidentiary hearing. In the same order, the district court gave Petitioner until February 20, 2004, to file his final exhibits list.
 
 
 8
 Among the items of evidence produced by Respondent at the January 29 conference, Petitioner found two documents that form the bases of his new Brady and Mooney claims. First, Petitioner found a cover note accompanying a letter sent from one of the prosecution witnesses, Avette Barrett, to her mother. Written by the witness' mother, the cover note reads in part, "I suppose Pete D. should see the letter also as I received a letter from him (Pete) saying Avette was saying Allison was as guilty as she and [Petitioner]." Petitioner argues that, by failing to turn over this allegedly exculpatory evidence, the prosecutor violated Petitioner's constitutional right to due process. Second, Petitioner discovered a notation in the trial prosecutor's file stating in part that "Defendant [Barrett] perjured herself at trial." (Brackets in original.) This notation, regarding one of the prosecution's key witnesses, forms the basis of Petitioner's Mooney claim.
 
 
 9
 On February 13, 2004, Petitioner filed with this court a petition for writ of mandamus, a request to recall the mandate in our 2001 opinion, and a motion to stay the district court's proceedings set for March 22, 2004, in light of the newly discovered evidence. Petitioner also requested a stay in district court pending the resolution of his petition for writ of mandamus. On February 17, 2004, the district court ordered that "Respondent shall respond to [Petitioner's request for a stay] no later than close of business February 19, 2004."
 
 
 10
 On February 18, 2004, however, Petitioner filed with this court an "Emergency Motion for Immediate Stay of District Court Proceedings." In that motion, Petitioner argued that by ordering Respondent to respond to the request for a stay, the district court intended that Respondent address "the substantive issues concerning Respondent's Brady violations and the false presentation of evidence claim." In an order filed the same day as Petitioner's emergency motion, the district court construed the motion to suggest (a) that the magistrate judge had "unequivocally ruled" that he had no jurisdiction to expand the issues because of the previous mandate and (b) that the magistrate judge intended to go beyond the request for a stay and finally rule on the merits of the Brady and Mooney claims. Thus, the district court construed Petitioner's emergency motion as an abandonment of his request for a stay in the district court. On February 20, 2004, this court stayed proceedings in the district court for the purpose of considering Petitioner's petition for a writ of mandamus.
 
 
 11
 While the district court proceedings were stayed, the magistrate judge wrote a letter to Petitioner's lawyer, stating that if both parties stipulated that the resolution of administrative matters, such as determining attorney fees and costs, did not violate the stay, the magistrate judge would begin addressing those issues. On March 10, 2004, Petitioner filed a "Supplement to Petition for Writ of Mandamus" in this court requesting that the case be remanded to a different magistrate judge because of bias.
 
 DISCUSSION
 
 12
 Understandably, the district court and the parties are unsure about where they stand, procedurally, at this juncture. We will do our best to unravel the knot.
 
 
 13
 Petitioner's first petition for habeas corpus has not been completely decided because there are pending guilt-phase issues and no final judgment has been entered. Thus, the petition may, in theory, be amended under Federal Rule of Civil Procedure 15(a). This circuit and others have noted that "Rule 15(a) applies to habeas corpus actions with the same force that it applies to garden-variety civil cases." Calderon v. United States Dist. Court (Taylor), 134 F.3d 981, 986 n. 6 (9th Cir.1998); see also 28 U.S.C. § 2242 (stating that a habeas petition "may be amended or supplemented as provided in the rules of procedure applicable to civil actions"); Johnson v. United States, 196 F.3d 802, 805 (7th Cir.1999) (holding that a petitioner may amend a habeas petition, rather than filing a second or successive petition, when the first petition has not yet reached a final decision).
 
 
 14
 Before the district court can amend the petition, of course, Petitioner must seek leave to amend. Although Petitioner has argued before this court that newly discovered evidence warrants consideration of his Brady and Mooney claims, we decline to address those claims on the merits in the context of mandamus, because Petitioner has another adequate means — presentation to the district court — to have these claims considered in the first instance.
 
 
 15
 Petitioner's February 13 motion for a stay of proceedings was, in substance, a request for leave to amend his habeas petition. Because we are denying the mandamus petition and the case therefore returns to district court, we vacate the district court's February 18 order holding that Petitioner has abandoned his motion to amend by seeking mandamus. When this case returns to the district court, the court must then address Petitioner's request for leave to amend.
 
 
 16
 Under Rule 15(a), leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). We have held that leave to amend, although within the discretion of the trial court, "should be guided by the underlying purpose of Rule 15(a) ... which was to facilitate decisions on the merits, rather than on technicalities or pleadings." James v. Pliler, 269 F.3d 1124, 1126 (9th Cir.2001). A district court may, however, take into consideration such factors as "bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the party has previously amended his pleadings." Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir.1995).
 
 
 17
 Respondent notes that, should the district court grant leave to amend, the newly amended habeas petition would be a "`mixed' petition" containing both exhausted and unexhausted claims. Guillory v. Roe, 329 F.3d 1015, 1017 (9th Cir.), cert. denied, 540 U.S. 974, 124 S.Ct. 449, 157 L.Ed.2d 324 (2003). For his part, Petitioner has two alternative theories about why the exhaustion requirement should not apply to his Brady and Mooney claims. First, Petitioner relies on Strickler v. Greene, 527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999), to argue that, because the state intentionally withheld evidence that would have enabled him to make timely claims in state court, the exhaustion requirement is excused. Alternatively, Petitioner contends that even if, as Respondent argues, the evidence that forms the bases of Petitioner's Brady and Mooney claims was made available to Petitioner's trial counsel, trial counsel's failure to discover or make use of that material is relevant to Petitioner's claim of ineffective assistance of counsel that is currently before the district court. These arguments are properly addressed to the district court. Before the district court rules on Petitioner's request for leave to amend, we cannot address either the procedural or substantive issues implicated by the proposed amended petition. See Taylor, 134 F.3d at 989 (stating that "any ruling as to the legitimacy of a step not yet taken would be tantamount to an advisory opinion").
 
 
 18
 We leave to the district court's discretion the further scheduling of whatever proceedings may be appropriate in the circumstances. We trust that all concerned will remain focused on the orderly and prompt resolution of Petitioner's guilt-phase claims on the merits.
 
 
 19
 We deny the request to send the case to a different magistrate judge or district judge on remand.
 
 
 20
 PETITION DENIED. Stay of the district court proceedings is dissolved.
 
 
 
 Notes:
 
 
 [1]
 Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
 
 
 [2]
 Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935) (per curiam).
 
 
 [3]
 For a description of the underlying facts, seeMorris v. Woodford, 273 F.3d 826, 828-30 (9th Cir.2001), superseding 229 F.3d 775, 777-78 (9th Cir.2000).
 
 
 FERGUSON, Circuit Judge, concurring specially:
 
 21
 Two matters have been presented to the court for the first time which call for a more thorough analysis of the validity of the administration of the death penalty in this case.
 
 
 22
 First, the Panel has been informed for the first time of the prosecution's position that the three defendants in this case are equally guilty of the murder of the victim.[1] Second, we have been informed for the first time that the mother of the older female defendant, Avette Barrett, notified the authorities that she had threatened to kill her mother, her mother's husband, and her sister and that they were terrified of her. In order to place these matters in context, a brief summary of the facts surrounding the murder are set forth.
 
 
 23
 The petitioner, Bruce Morris, and two female co-defendants, Avette Barrett and Allison Eckstrom, were picked up as hitchhikers by Rickey Van Zandt. Van Zandt was murdered (now admitted to be equally murdered) by the three defendants. Petitioner was sentenced to death. Barrett was sentenced to three years for stealing Van Zandt's automobile. Eckstrom, a juvenile, had all charges dismissed, without any juvenile proceeding against her.
 
 
 24
 The concession by the prosecution that all three were "equally guilty" casts a new, and highly troubling, light on the state court's refusal to present the following instruction to the jury at Morris's penalty-phase trial:
 
 
 25
 In determining the existence of mitigating circumstances you must take into account that the defendant's accomplice Allison Eckstrom was allowed to plead guilty to a reduced charge and was promised a sentence of dismissal. Avette Barrett was promised three years or less.
 
 
 26
 The prosecution's position is that, of the three "equally guilty" perpetrators, one (Morris) deserves to be executed while the other two serve little or no time in prison. As Justice Brennan has noted, this sort of gross disparity in treatment of equally guilty defendants "highlights the utter failure of the elaborate sentencing schemes approved by the Court in Gregg and its companion cases to meaningfully limit the arbitrary infliction of death by the States." DeGarmo v. Texas, 474 U.S. 973, 974-75, 106 S.Ct. 337, 88 L.Ed.2d 322 (1985) (Brennan, J., dissenting from denial of petition for writ of certiorari). Although the Court has attempted to place limits on juries' discretion to impose the death penalty, "discrimination and arbitrariness at an earlier point in the selection process nullify the value of later controls on the jury." Id. at 975, 106 S.Ct. 337. The Eighth Amendment prohibits prosecutors from arbitrarily singling out one person for death where the guilt is equally spread among the perpetrators. Id.
 
 
 27
 Although the discretion afforded prosecutors in selecting who to prosecute and what charges to bring is extremely broad, "there are undoubtably constitutional limits upon its exercise." Bordenkircher v. Hayes, 434 U.S. 357, 365, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). A decision to prosecute may not be "based upon an unjustifiable standard such as race, religion, or other arbitrary classification." Id. at 364, 98 S.Ct. 663. Where a claim of such selective prosecution is made, it will be judged "according to ordinary equal protection standards." Wayte v. United States, 470 U.S. 598, 608, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985).
 
 
 28
 In United States v. Redondo-Lemos, 955 F.2d 1296, 1300 (9th Cir.1992), overruled en banc on other grounds by United States v. Armstrong, 48 F.3d 1508 (9th Cir.1995), rev'd, 517 U.S. 456, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996), this Circuit distinguished between the general right "not to have charging or plea bargaining decisions made in an arbitrary or capricious manner" and a specific claim that prosecutorial decisions were made on the basis of sex, race, religion, or similar characteristics. The latter case was held to raise both Due Process and Equal Protection problems, and a judicial inquiry into whether protected classes of people were being treated differently was found to be manageable. Id. at 1301. Consequently, the Circuit wrote, "the Supreme Court has concluded that courts do indeed have the authority to inquire into charging and plea bargaining decisions to determine whether the prosecutor is abusing her awesome power to favor or disfavor groups defined by their gender, race, religion, or similar characteristic." Id.
 
 
 29
 However, where exercise of prosecutorial discretion is arbitrary but there is no hint of class-based discrimination, the Redondo-Lemos majority said that there was no judicial remedy available to the defendant[2] — even while acknowledging that such an arbitrary exercise of power would be a Due Process violation. Id. at 1300. The majority justified this result on separation-of-powers grounds: for the courts to inquire into prosecutors' decision-making processes would entangle them "in the core decisions of another branch of government." Id.
 
 
 30
 Here, however, there is no need for any court to undertake an investigation as to why the prosecution singled out Morris for the death penalty when it pursued little to no penalty against his equally guilty, and apparently violent, co-defendants. This case is a case of mitigating evidence. In such a case, the jury must be instructed that it may consider, as a mitigating factor, the fact that the prosecution pursued substantially more lenient punishment against Morris's equally guilty co-perpetrators.
 
 
 31
 Permitting the jury to consider such circumstances as a mitigating factor would address the Due Process concerns raised in Redondo-Lemos without bringing in any separation-of-powers issues. It would not require the courts to investigate the internal charging decisions of the prosecutor. Instead, it would compel the prosecution to live with the charging decisions it has made: if the jury found that the exercise of discretion in seeking the death penalty against Morris was arbitrary, it would be free to use that as a mitigating factor. See United States v. Bin Laden, 156 F.Supp.2d 359, 369 (S.D.N.Y.2001) (finding that, in enacting the statute under which the defendant was prosecuted, Congress intended for juries to consider, as a mitigating factor, that "another defendant or defendants, equally guilty in the crime, will not be punished by death" so as to "provide[] jurors with a means of improving the likelihood that the death penalty would not be administered in an arbitrary or random manner").
 
 
 32
 Permitting the jury to consider the disparate sentences pursued against equally guilty defendants would also be in keeping with Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), which held that the Eighth and Fourteenth Amendments require that capital juries not be precluded from considering, as mitigating factors, any aspects of a defendant's character or of "the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." Although the Ninth Circuit has held that a trial court does not violate Lockett by failing to permit consideration of co-defendant sentences as a mitigating factor, it did so in a case where the defendant facing the death penalty was "not situated similarly to his co-defendants" because "[h]e was the only defendant charged with the special circumstance of a previous murder, and he was the only one who physically participated in both California homicides." Beardslee v. Woodford, 358 F.3d 560, 579-80 (9th Cir.2004). This case is distinguishable because, here, the prosecution specifically acknowledged that Morris, Eckstrom, and Barrett were equally guilty of Van Zandt's murder; unlike the defendant in Beardslee, Morris is situated similarly with respect to his guilt in Van Zandt's death.
 
 
 33
 There would be no legal imposition of the death penalty without the ability of juries to consider mitigating evidence proffered by the capital defendant. See Gregg v. Georgia, 428 U.S. 153, 206, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (holding that Georgia's revised death 4356 penalty sentencing scheme differed from that ruled unconstitutional in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), because it "focus[ed] the jury's attention on the particularized nature of the crime and the particularized characteristics of the individual defendant"); see also Lockett, 438 U.S. at 603, 98 S.Ct. 2954 (holding that juries may "not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers" (emphasis in original)). Where the prosecution has conceded that it has singled out one defendant among several equally guilty perpetrators to receive a death sentence, the defendant must be permitted to present that circumstance for consideration by the jury as a mitigating factor.
 
 
 
 Notes:
 
 
 [1]
 In its Answer to the Petition for Writ of Mandamus, at 8-9, the prosecution states that it "was never disputed" that Morris, Barrett, and Eckstrom "were equally guilty of the felony-murder of Rickey Van Zandt."
 
 
 [2]
 As the concurrence noted, there was no need for such a broad pronouncement because the defendant inRedondo-Lemos had not been able to make out a prima facie Due Process claim. Id. at 1303 (Canby, J., concurring). It was thus "unnecessary to go further and proclaim that there can never be a due process inquiry into the internal charging decisions of the prosecution." Id.