**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

YEWHALASHET ABEBE,

*Petitioner,*

v.

MICHAEL B. MUKASEY, Attorney General,

*Respondent.*

No. 05-76201

Agency No.
A26-810-941

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
March 25, 2008—San Francisco, California

Filed November 20, 2008

Before: Alex Kozinski, Chief Judge, Harry Pregerson,
Andrew J. Kleinfeld, Sidney R. Thomas, Barry G. Silverman,
Ronald M. Gould, Richard C. Tallman, Richard R. Clifton,
Consuelo M. Callahan, Carlos T. Bea and N. Randy Smith,
Circuit Judges.

Per Curiam Opinion;
Concurrence by Judge Clifton;
Dissent by Judge Thomas

15655

## COUNSEL

Robert B. Jobe and Fatma Marouf, Law Office of Robert B. Jobe, San Francisco, California, for the petitioner.

Thomas H. Dupree, Jr., Deputy Assistant Attorney General; Peter D. Keisler, Assistant Attorney General; M. Jocelyn Lopez Wright, Assistant Director, Office of Immigration Litigation; Song E. Park, Office of Immigration Litigation, Washington, DC, for the respondent.

## OPINION

PER CURIAM:

**1.** Petitioner became a lawful permanent resident in 1984 and, in 1992, pled guilty to lewd and lascivious conduct upon a child. Cal. Penal Code § 288(a). INS commenced removal proceedings on the ground that he was deportable as having committed an "aggravated felony," 8 U.S.C. § 1227(a)(2)(A)(iii)—"sexual abuse of a minor," *id.* § 1101(a)(43)(A). The Immigration Judge (IJ) denied petitioner's asylum, withholding of removal and Convention Against Torture claims, and found petitioner ineligible for a discretionary waiver of deportation under former Immigration and Nationality Act § 212(c), 8 U.S.C. § 1182(c) (repealed 1996).[1] On appeal to the Board of Immigration Appeals (BIA), petitioner argued that he's eligible for section 212(c) relief. The BIA affirmed, and Abebe petitions for review.

**2.** Petitioner argues that, by finding him ineligible for sec-

---

[1]Even though section 212(c) was repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. 104-208, the Supreme Court held that this repeal can't be applied retroactively to aliens, such as petitioner, who pled guilty to deportable crimes before IIRIRA took effect. *INS* v. *St. Cyr*, 533 U.S. 289, 326 (2001).

tion 212(c) relief, the BIA denied him equal protection. Relying on *Komarenko* v. *INS*, 35 F.3d 432, 434-35 (9th Cir. 1994), the three-judge panel held that petitioner isn't eligible for section 212(c) relief. *Abebe* v. *Gonzales*, 493 F.3d 1092, 1104-05 (9th Cir. 2007), *vacated*, 514 F.3d 909 (9th Cir. 2008). Under *Komarenko*, 35 F.3d at 434-35, a deportable alien can only be eligible for section 212(c) relief if his grounds for deportation are substantially identical to a ground for inadmissibility.[2] Here, petitioner is deportable for committing an "aggravated felony," 8 U.S.C. § 1227(a)(2)(A)(iii), which the panel held isn't substantially identical to the most analogous ground for inadmissibility—committing a "crime involving moral turpitude," *id.* § 1182(a)(2)(A)(i)(I). *Abebe*, 493 F.3d at 1104-05. Petitioner claims that the rationale of *Komarenko* can't be squared with that of *Tapia-Acuna* v. *INS*, 640 F.2d 223, 225 (9th Cir. 1981). He therefore asks us to overrule *Komarenko*, and hold that a deportable alien can only be eligible for section 212(c) relief if his *conviction* is substantially identical to a ground for inadmissibility. *See Abebe*, 493 F.3d at 1106 (Berzon, J., concurring).

**[1]** Under its plain language, section 212(c) only gives the Attorney General discretion to grant lawful permanent residents relief from *inadmissibility*[3] —not deportation. *See* 8 U.S.C. § 1182(c) (repealed 1996). *Tapia-Acuna*, though, followed *Francis* v. *INS*, 532 F.2d 268, 273 (2d Cir. 1976), and

---

[2]Inadmissibility (or "exclusion" under pre-IIRIRA law) applies to an alien outside the United States who is not allowed to enter, 8 U.S.C. § 1182(a), whereas deportation applies to an alien who is already in the United States and is ejected, *id.* § 1227. *See Guzman-Andrade* v. *Gonzales*, 407 F.3d 1073, 1076 (9th Cir. 2005). Under IIRIRA, both inadmissible and deportable aliens go through the same process, called "removal proceedings." *Id.* (citing *Romero-Torres* v. *Ashcroft*, 327 F.3d 887, 889 (9th Cir. 2003)).

[3]IIRIRA changes somewhat the nomenclature applicable to immigration cases. What used to be "excludability" is now "inadmissibility"; what used to be "deportation" is now "removal." We use these terms interchangeably.

held that equal protection required us to extend section 212(c) relief to aliens facing deportation—if such aliens would have been eligible for section 212(c) relief from inadmissibility, had they left the United States and attempted to reenter. *Tapia-Acuna*, 640 F.2d at 225. In following *Francis*, *Tapia-Acuna* reasoned that there is no rational basis for granting additional immigration relief to aliens who temporarily leave the United States and try to reenter (i.e., aliens facing inadmissibility), than to aliens who remain in the United States (i.e., aliens facing deportation). *Tapia-Acuna*, 640 F.2d at 225. According to *Francis* and *Tapia-Acuna*, it is wholly irrational for Congress to give *any* advantage to aliens outside the United States that it denies to similarly situated aliens within the United States.

**[2]** We are not convinced that *Francis* and *Tapia-Acuna* accorded sufficient deference to this complex legislative scheme, and therefore reconsider this question, as we are authorized to do en banc. We note at the outset that the statute doesn't discriminate against a discrete and insular minority or trench on any fundamental rights, and therefore we apply a standard of bare rationality. *United States* v. *Barajas-Guillen*, 632 F.2d 749, 752 (9th Cir. 1980) (quoting *Alvarez* v. *Dist. Dir. of the U.S. INS*, 539 F.2d 1220, 1224 (9th Cir. 1976)). Congress has particularly broad and sweeping powers when it comes to immigration, and is therefore entitled to an additional measure of deference when it legislates as to admission, exclusion, removal, naturalization or other matters pertaining to aliens. *See Kleindienst* v. *Mandel*, 408 U.S. 753, 769-70 (1972); *Boutilier* v. *INS*, 387 U.S. 118, 123-24 (1967); *Flemming* v. *Nestor*, 363 U.S. 603, 616 (1960). Our task, therefore, is to determine, not whether the statutory scheme makes sense to us, but whether we can conceive of a rational reason Congress may have had in adopting it.[4]

---

[4]In making this determination, we do not look to the actual rationale for the legislation, as it is often very difficult or impossible to determine what

**[3]** We can: Congress could have limited section 212(c) relief to aliens seeking to enter the country from abroad in order to "create[ ] an incentive for deportable aliens to leave the country." *Requena-Rodriguez* v. *Pasquarell*, 190 F.3d 299, 309 (5th Cir. 1999) (quoting *LaGuerre* v. *Reno*, 164 F.3d 1035, 1041 (7th Cir. 1998)); *see DeSousa* v. *Reno*, 190 F.3d 175, 185 (3d Cir. 1999). A deportable alien who wishes to obtain section 212(c) relief will know that he can't obtain such relief so long as he remains in the United States; if he departs the United States, however, he could become eligible for such relief. By encouraging such self-deportation, the government could save resources it would otherwise devote to arresting and deporting these aliens. *See Jurado-Gutierrez* v. *Greene*, 190 F.3d 1135, 1153 (10th Cir. 1999), *abrogated in part by INS* v. *St. Cyr*, 533 U.S. 289, 326 (2001). Saving scarce resources that would otherwise be paid for by taxpayers is certainly a legitimate congressional objective.

**[4]** We thus overrule *Tapia-Acuna*'s holding that there's no rational basis for providing section 212(c) relief from inadmissibility, but not deportation. The BIA therefore didn't violate petitioner's right to equal protection by finding him ineligible for section 212(c) relief from deportation. Since petitioner was not eligible for section 212(c) relief in the first place, the BIA could not have committed an equal protection violation by denying him such relief. We affirm the BIA's section 212(c) ruling, and have no reason to reconsider *Komarenko*. Indeed, under our ruling today,

a collective body, such as Congress, has in mind. The task would be particularly difficult in a case like ours where the statutory scheme now in force is the product of repeated layers of congressional enactments and judicial interpretations, so it is quite likely that no one anticipated the existing Byzantine structure. Our inquiry therefore focuses on whether a hypothetically rational Congress could have adopted the statutory scheme, not on whether Congress actually adopted the statute with that particular reason in mind.

*Komarenko* becomes a dead letter, as its only purpose was to fill a gap created by *Tapia-Acuna*.

**[5] 3.** Petitioner also argues that the IJ erred by denying his claim for withholding of removal. But petitioner didn't raise a withholding of removal claim in his brief before the BIA, and the BIA was therefore not required to consider it. *See, e.g.*, *Bowers* v. *Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 535 n.11 (3d Cir. 2007) (issues raised in the notice of appeal but not argued in appellant's principal brief are deemed abandoned). When a petitioner files no brief and relies entirely on the notice of appeal to make an immigration argument, as he may do before the BIA, *see* 8 C.F.R. § 1003.38(f), then the notice of appeal serves in lieu of a brief, and he will be deemed to have exhausted all issues raised therein. But when a petitioner does file a brief, the BIA is entitled to look to the brief for an explication of the issues that petitioner is presenting to have reviewed. Petitioner will therefore be deemed to have exhausted only those issues he raised and argued in his brief before the BIA. Here, petitioner did file a brief, which did not raise the withholding of removal issue. He therefore didn't exhaust that claim, and we lack jurisdiction to review it. *Barron* v. *Ashcroft*, 358 F.3d 674, 677 (9th Cir. 2004) (citing 8 U.S.C. § 1252(d)(1)). *Ladha* v. *INS*, 215 F.3d 889, 903 (9th Cir. 2000), is overruled.

**PETITION DENIED IN PART and DISMISSED IN PART.**[5]

---

[5]For the reasons given in the three-judge panel opinion, the BIA didn't erroneously or inconsistently apply 8 U.S.C. § 1182(c) (repealed 1996), or 8 C.F.R. § 1213(f). *Abebe*, 493 F.3d at 1101-04. Likewise, we reject petitioner's due process retroactivity argument. *Id.* at 1105.

CLIFTON, Circuit Judge, with whom Circuit Judges SILVERMAN and GOULD join, concurring in the judgment:

I concur in the judgment, denying in part and dismissing in part Yewhalashet Abebe's petition for review. I do not join most of the majority opinion,[1] however, because I believe it is both unnecessary and unwise to overrule our prior decision in *Tapia-Acuna v. INS*, 640 F.2d 223 (9th Cir. 1981), to reach that result. The government has not advocated such a drastic step. The original decision by a three-judge panel of our court, *Abebe v. Gonzales*, 493 F.3d 1092 (9th Cir. 2007), reached the same result in this case as the majority reaches today, simply by applying our existing precedent, *Komarenko v. INS*, 35 F.3d 432 (9th Cir. 1994). The en banc panel should do the same.

I share the concern expressed in the dissent with overruling more than sixty years of agency precedent and more than twenty-seven years of our own precedent. I also share the fear that the path taken by the majority puts into jeopardy the agency's ability to continue to grant discretionary relief in removal proceedings pursuant to 8 C.F.R. § 1212.3. Although the majority says otherwise, its interpretation of the statute appears to leave no room for that practice to continue. In addition, I would prefer to avoid aggravating a circuit split with the numerous other courts that have adopted the same balance we struck in *Komarenko*.

I nevertheless concur in the judgment because I conclude that aliens who could have been, but were not, charged with removal on grounds equivalent to a ground for inadmissibility are not similarly situated to aliens who were actually so charged. Abebe's equal protection challenge therefore fails. Put another way, although I agree with most of Part I of the dissent, I disagree with Part II and do not believe we should

---

[1] I do join in Part 3 of the majority opinion, because I agree that petitioner did not exhaust his withholding of removal claim before the agency.

overturn our decision in *Komarenko* and follow the Second Circuit's recent decision in *Blake v. Carbone*, 489 F.3d 88 (2d Cir. 2007). I would adhere to *Komarenko* and deny Abebe's petition accordingly.

**I.**

As the dissent points out, since at least 1940 the Executive Branch (now in the form of the Department of Homeland Security, or DHS, and formerly through the Immigration and Naturalization Service, or INS) has interpreted the Immigration and Nationality Act (INA) as granting it the discretion to afford relief from both deportation (of an alien inside the United States, a process now called removal) and exclusion (of an alien seeking admission to this country at the border, now described as inadmissibility). *See Matter of L.*, 1 I. & N. Dec. 1 (BIA 1940). Congress was aware of this practice when it drafted the 1952 amendments to the INA, including section 212(c). *See In the Matter of S.*, 6 I. & N. Dec. 392, 394-96 (BIA 1955) (examining the legislative history). Although the amendments made it harder for aliens to qualify for such discretionary relief, there is nothing in the legislative history, which catalogued other perceived abuses, to suggest that Congress disapproved of the government's use of the predecessor to section 212(c) to grant waivers in deportation proceedings. This is among the reasons that the Board of Immigration Appeals held, shortly after the amendments' passage, that the Attorney General retained the discretion under section 212(c) to grant relief in both deportation and exclusion proceedings. *Id.*

Initially, the government permitted aliens to apply for relief from deportation only if they had temporarily left the country such that they might have been subject to exclusion. In 1981, we held in *Tapia-Acuna* that there was no rational basis in the context of section 212(c) for discriminating against aliens who had remained in the United States. *Tapia-Acuna v. INS*, 640 F.2d 223, 225 (9th Cir. 1981).

Today, the majority holds that we were mistaken in *Tapia-Acuna* and that there is a legitimate basis for so limiting the availability of section 212(c) relief. Even assuming there are arguments in favor of that position, we rejected it twenty-seven years ago. There is no compelling reason to overturn that judgment now. No relevant circumstances have changed, and our decision has been on the books for nearly three decades without causing any mischief in the law. The majority may be animated by a desire to avoid future problems or more expansive conceptions of equal protection, such as that expressed by the Second Circuit in *Blake*, but that appears to me to be an empty fear. We haven't extended *Tapia-Acuna*'s rationale to other situations, and any putative harm in the future could more easily be avoided by continuing to limit that precedent to its context.

The majority doesn't quarrel with the legal rule of *Tapia-Acuna*, that the Equal Protection Clause prohibits irrational disparities in treatment. It simply disagrees with the application of that long-settled rule to a statutory provision that was repealed a dozen years ago. It disagrees that the disparate treatment our court previously concluded was irrational is, in fact, irrational. Reasonable minds may always disagree over the outcome of a close case, however, and our prior conclusion is consistent with the conclusions of every other circuit. I see no justification for saying now that all of those decisions were incorrect, especially when the vitality of section 212(c), a statute long since repealed, has already diminished to near insignificance. There is no pressing need to pay so little heed to the weight of precedent and correct what, at most, is simply a misapplication of an agreed upon rule.

The "rational basis" the majority identifies in support of discriminating against aliens who failed to temporarily leave the United States after committing an offense that might qualify them for removal or inadmissibility relies on a tenuous chain of inferences. The majority hypothesizes that Congress anticipated that some aliens might decide to travel across the

border based on knowledge that, under the immigration statute, they could be eligible for discretionary relief if they left the country and returned, but would not be so eligible if they did not leave the country. The majority further speculates that, from the group of aliens who left the country for this reason, some might be successfully stopped at the border upon their return and denied reentry, thereby saving the government the expense of having to later remove them. Perhaps. But it is not an accident that the majority opinion finds it necessary to acknowledge, at 15660-61, n.4, that it is not seeking to identify the actual rationale for the legislation. I doubt that anyone believes that the majority's tortured construct was in the mind of anybody on Capitol Hill. Justifications for overruling one of our court's longstanding precedents should be made of sterner stuff. We might just as well say that Congress simply preferred to let the agency grant discretionary relief only to those aliens who love international travel. We must place some rational bounds on what survives rational basis review if the constitutional right of equal protection is to have any meaning whatsoever outside the context of suspect classifications.[2]

Not only does the majority overrule our precedent, it casts doubt on DHS's power to grant section 212(c) relief in deportation or removal proceedings. It concludes that "[u]nder its plain language, section 212(c) only gives the Attorney General discretion to grant lawful permanent residents relief from *inadmissibility*—not deportation." Majority Op. at 15659 (emphasis in original). In doing so, the majority holds that sixty-eight years of agency practice was contrary to the will of Congress and in violation of the plain language of the stat-

[2]Perhaps the majority believes that equal protection should have force only in cases involving some form of invidious discrimination, and that all laws should survive rational basis review, but this case is a particularly poor vehicle to stake out that position given the growing irrelevance of section 212(c) and the need to break away from all of our sister circuits and reverse our own precedent to do so.

ute the agency is charged with interpreting, and that countless otherwise deportable or removable aliens have remained in this country due to the agency's error.

Later, when addressing the dissent, the majority says otherwise and contends that nothing in the opinion undermines the validity of 8 C.F.R. § 1212.3(f)(5). That regulation codifies DHS's approach, which we approved of in *Komarenko*, of limiting the availability of section 212(c) relief in removal proceedings to aliens charged with removal on a ground that has a substantially identical statutory counterpart in the INA's inadmissibility provisions (the "statutory counterpart rule"). 8 C.F.R. § 1212.3(f)(5); *Komarenko v. INS*, 35 F.3d 432, 434 (9th Cir. 1994). But if the statute itself does not authorize DHS to grant section 212(c) relief in any removal proceedings whatsoever, as the majority holds, where does authority to grant similar relief from inadmissibility come from?

It is not an answer to say that the government may choose to treat different classes or aliens the same. The statute in question is one that authorizes INS (now DHS) to grant *discretionary* waivers to persons in exclusion proceedings. If the agency had the authority to grant discretionary waivers to everyone, including persons in deportation proceedings, whether or not the statute provides such authority, then there would be no reason for the statute in the first place. The whole thrust of the majority's reasoning is that Congress, in adopting the relevant statute, could rationally distinguish between deportation and exclusion proceedings and could limit the ability of INS to grant discretionary waivers only to those in exclusion proceedings. Under the reasoning of the majority, the agency does not have the authority to grant such waivers to aliens in deportation proceedings, and if that's the case, 8 C.F.R. § 1212.3(f)(5) serves no purpose.

Finally, not only has every circuit to consider the question accepted *Tapia-Acuna*'s conclusion that section 212(c) relief is available in deportation and removal proceedings regardless

of whether an alien has left the country, but every circuit to consider the question except the Second Circuit, *see Blake*, 489 F.3d at 104, has also followed *Komarenko* and upheld the constitutionality of DHS's statutory counterpart rule. *See Kim v. Gonzales*, 468 F.3d 58, 62-63 (1st Cir. 2006); *Caroleo v. Gonzales*, 476 F.3d 158, 162-63 (3rd Cir. 2007); *Brieva-Perez v. Gonzales*, 482 F.3d 356, 362 (5th Cir. 2007); *Gjonaj v. INS*, 47 F.3d 824, 827 (6th Cir. 1995) ("Numerous courts have held there must be a comparable ground of exclusion for an alien in deportation proceedings to be eligible for [section] 212(c) relief. We decline to change this well-established rule."); *Valere v. Gonzales*, 473 F.3d 757, 762 (7th Cir. 2007) (holding that if "the removable alien's crime of conviction is not substantially equivalent to a ground of inadmissibility . . . then the removable alien is not similarly situated for purposes of claiming an equal protection right to apply for § 212(c) relief"); *Soriano v. Gonzales*, 489 F.3d 909 (8th Cir. 2006); *Rodriguez-Padron v. INS*, 13 F.3d 1455, 1459 (11th Cir. 1994); *see also Zamora-Mallari v. Mukasey*, 514 F.3d 679, 691-92 (7th Cir. 2008) (rejecting the reasoning of the Second Circuit's decision in *Blake*); *Vue v. Gonzales*, 496 F.3d 858, 860-62 (8th Cir. 2007) (same). In overruling *Tapia-Acuna* and discarding *Komarenko* as a dead letter, the majority creates a three-way circuit split between those circuits that follow *Komarenko*, those that follow *Tapia-Acuna* but not *Komarenko*, and our court. Because I can discern no good reason to abandon our sister circuits after they have faithfully accompanied us down this now well-worn path, I cannot join the majority opinion.

## II.

Turning to the merits of Abebe's equal protection challenge, the dissent states that "[i]n cases such as this, it is the act or offense itself that makes one alien similarly situated to another, not the grounds the government chooses to use to deport the aliens." Dissent at 15679. I disagree.

The government sought to remove Abebe on two independent grounds: (1) his two convictions for committing crimes involving moral turpitude (CIMTs) and (2) his conviction for committing an aggravated felony. Abebe argues that his aggravated felony conviction could also qualify as a CIMT and that, if the government had sought to remove him solely for CIMTs, which can also render an alien eligible for exclusion, then he would have been eligible for discretionary relief under section 212(c). He contends that DHS's statutory counterpart rule violates his right to equal protection under the Due Process Clause because it denies him the benefit of section 212(c) relief simply because the government chose to remove him as an aggravated felon instead of an alien who had committed CIMTs. Abebe asks that the court impose a rule under which an immigration judge would be forced to determine whether, given a particular conviction, the government *could* have sought to remove an alien on a ground equivalent to a ground for inadmissibility.

Abebe cannot demonstrate that he has been irrationally subjected to discriminatory treatment, however, because he cannot show that he was in the same position as an alien who was charged with removal on a substantially similar ground to a ground for inadmissibility. Put simply, two aliens who have been charged with removal on different statutory grounds are not similarly situated. That the underlying facts are such that the government could have charged them with removal under similar statutory grounds is not enough. If that rule were adopted, it would create a host of problems in countless situations, predictable and unpredictable, where the government is vested with, and exercises, discretion. To take the most obvious example, imagine the quotidian circumstance of a prosecutor faced with the decision of what charges to bring against an individual based on a given set of facts. Each charge will carry different consequences, but a defendant cannot contest the charges actually brought against him by arguing that the government could have charged him with a different offense under a different statutory provision.

Congress has vested the executive branch with discretion in whether, when, and how to charge an alien with removal. How it exercises that discretion will have a serious impact on the life of a removable alien, whether it means forcible removal from the country or the availability of section 212(c) relief. To hold that the exercise of that discretion is unconstitutional where it is not exercised in the most advantageous way possible for a given alien under the circumstances would open the door to a torrent of claims. An alien is no more entitled to section 212(c) relief when charged with a ground of removal that has no statutory counterpart under the INA's inadmissibility provisions than a defendant is entitled to a sentencing range consistent with the least serious crime with which he could have been charged.

This is not to say that the executive branch's exercise of discretion is without constitutional limits. We have permitted claims to proceed against prosecutors whose decisions were allegedly made on the basis of sex, race, or religion. *United States v. Redondo-Lemos*, 955 F.2d 1296, 1300 (9th Cir. 1992), *overruled on other grounds by United States v. Armstrong*, 48 F.3d 1508 (9th Cir. 1995) (en banc), *rev'd*, 517 U.S. 456 (1996). Absent evidence of discrimination against a suspect class, however, there is no judicial remedy for even arbitrary charging or plea bargaining decisions, even though "such an arbitrary exercise of power would be a Due Process violation." *Morris v. U.S. Dist. Court*, 363 F.3d 891, 896 (9th Cir. 2004) (citing *Redondo-Lemis*, 955 F.2d at 1300). This is because judicial inquiry "into prosecutors' decision-making processes would entangle [courts] 'in the core decisions of another branch of government,' " raising separation-of-powers concerns. *Id.*

In *Komarenko*, this court provided additional, pragmatic reasons for denying section 212(c) relief to an alien charged with deportation under a subsection of the former deportation statute that was not "substantially identical" to a subsection of the former exclusion statute. Like Abebe, the petitioner in

*Komarenko* argued that his underlying conviction could have qualified as a CIMT, a statutory ground for exclusion, which would have made him eligible for section 212(c) relief. The court held that the two grounds were "entirely dissimilar" and that "the distinction between the two classes is not arbitrary or unreasonable." 35 F.3d at 435 (citing *Campos v. INS*, 961 F.2d 309, 316 (1st Cir. 1992) ("We cannot say that it is absurd that for purposes of discretionary deportation review Congress chooses to treat different crimes differently.")). We declined to engage in speculation over whether a particular alien "*could have been* excluded under the moral turpitude provision," and noted that adopting the petitioner's proposed approach "would extend discretionary review to every ground for deportation that could constitute the essential elements of a crime involving moral turpitude." *Id.* (emphasis in original) (internal quotation marks omitted). The court concluded that "[s]uch judicial legislating would vastly overstep our limited scope of judicial inquiry into immigration legislation, and would interfere with the broad enforcement powers Congress has delegated to the Attorney General." *Id.* (internal citations and quotation marks omitted). This reasoning applies with equal force today and, as discussed above, six of the seven other circuits to face the question have reached the same result.

This is not a situation, as the dissent contends, where two lawful permanent residents are being treated differently because one chose to "step across the border for a day." Dissent at 15672. It is a situation where two individuals are being treated differently because the charges against them are materially different, and different charges bring different consequences. This simple fact is as true in immigration proceedings as it is in criminal law. We cannot look only to the underlying conduct; rather, the consequences that ultimately flow from an individual's actions depend heavily on the government's exercise of its charging discretion.

Here, *Abebe* had a number of prior convictions. The government could have chosen to seek removal based on (1) his

convictions for CIMTs, (2) his aggravated felony conviction, or (3) both. It chose option three, aggressively seeking removal on every available ground. The court should not put immigration judges in the business of second-guessing such charging decisions. In light of how the government chose to charge Abebe with removal, he was not similarly situated to an alien charged with being inadmissible, or an alien charged with removal on a ground with a statutory counterpart in the INA's inadmissibility provisions, and his equal protection challenge fails.

I therefore concur in the judgment of the court.

---

THOMAS, Circuit Judge, with whom PREGERSON, Circuit Judge, joins, dissenting:

Distilled to its essence, this case involves the irrationality of affording privileges to lawful permanent residents who step across the border for a day, but denying the same privileges to those who do not. The majority not only blesses this unequal treatment, but goes much further, overruling more than 60 years of precedent, approving an unconstitutional statutory scheme not even the Board of Immigration Appeals endorses, and implicitly declaring unconstitutional a federal regulation.

I respectfully dissent.

I

First, some background. Prior to enactment of the Illegal Immigration Reform and Immigrant Responsibility Act in 1996 ("IIRIRA"), there were separate procedures and substantive rules relating to (1) the deportation of persons already present in the United States, and (2) the exclusion of persons seeking entry. *Armendariz-Montoya v. Sonchik*, 291 F.3d

1116, 1122 (9th Cir. 2002). The INA defined deportable aliens in § 241, 8 U.S.C. § 1251 (transferred to § 237, 8 U.S.C. § 1227), and excludable aliens in § 212(a), 8 U.S.C. § 1182. The exclusion procedures did not only apply to those seeking entry into the United States in the first instance. If a non-citizen residing in the United States temporarily left the country, he could be excluded from re-entry. Lawful permanent residents ("LPRs") are, of course, non-citizens who have successfully satisfied statutory requirements and earned the favorable exercise of discretion by the government to be allowed to reside in the United States permanently. Although a permanent resident, an LPR still could be deported if he committed a qualifying crime. If he left the country temporarily, he could also be excluded upon return if he had committed a qualifying offense. An LPR, as a non-citizen seeking entry, would generally be subject to the same proceedings and grounds of exclusion if he traveled abroad and returned to the United States. *See* INA §§ 101(a)(3) & (13), 66 Stat. 166, 167 (1952). Facing a large volume of cases in which a waiver of exclusion was sought in compassionate cases involving LPRs, Congress afforded certain qualifying LPRs the protection of subsection (c):

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of paragraph (1) through (25) and paragraphs (30) and (31) of subsection (a).

INA § 212(c), 66 Stat. 187.

By its terms, former INA § 212(c), 8 U.S.C. § 1182(c) (repealed 1996), applies only to persons in exclusion proceedings. The Board of Immigration Appeals ("BIA") first recognized a problem with making section 212(c) relief available

to excludables but not deportables in 1940, in the context of section 212(c)'s precursor statute.[1] *See Matter of L*, 1 I. & N. Dec. 1 (1940). In *Matter of L*, the BIA held that relief under section 212(c)'s precursor was available in a deportation proceeding where the alien had departed and returned to the United States after the ground for exclusion/deportation arose. To hold otherwise, the BIA noted, would render the statute "capricious and whimsical." *Id.* at 5. The Second Circuit took this interpretation to its logical extension in *Francis*, 532 F.2d 268, holding that section 212(c) relief must be available to all persons in deportation proceedings who would be excludable on the same grounds, not just those who had actually left the country and reentered. Immediately following *Francis*, the BIA embraced the *Francis* analysis. *Matter of Silva*, 16 I. & N. Dec. 26, 30 (BIA 1976).

When the question then reached our Court, the matter had been so clearly determined that when we initially affirmed, in an unpublished disposition, a denial of section 212(c) relief to an alien in a deportation proceeding, the Supreme Court granted certiorari and remanded the case to us for reconsideration in light of the Solicitor General's position in its brief before the Supreme Court. The Solicitor General's Brief on Petition for a Writ of Certiorari asserted "the government's current position that those precedents [which limit section 212(c) to exclusion proceedings] are erroneous and should be overruled." Brief for the Respondent at 6, *Tapia-Acuna v. INS*, 449 U.S. 945 (1980). The Solicitor General further stated that "[i]n the government's view, the Ninth Circuit's position is without support in either the statutory language of [section 212(c)] or the case law on which the court of appeals has relied." *Id.* at 6. On remand, we followed *Francis* and held that "eligibility for [§ 212(c)] relief cannot constitutionally be denied to an otherwise eligible alien who is deportable under

---

[1]Section 212(c) grew out of the Seventh Proviso to Section 3 of the Immigration Act of 1917, 39 Stat. 874. *See Francis v. INS*, 532 F.2d 268 (2d Cir. 1976).

[§ 241(a)(11) (narcotics conviction)], whether or not the alien has departed from and returned to the United States after the conviction." *Tapia-Acuna v. INS*, 640 F.2d 223, 225 (9th Cir. 1981).

To this date, every court to consider the issue has determined that due process requires that section 212(c) must be applied to deportation proceedings as well as exclusion proceedings. *See Blake v. Carbone*, 489 F.3d 88, 103-04 (2d Cir. 2007) (discussing cases).

## A

Our sister circuits are right. The Supreme Court has long held that the constitutional promise of equal protection of the laws applies to aliens as well as citizens. *Yick Wo v. Hopkins*, 118 U.S. 356 (1886). Under the minimal scrutiny test, which is applicable in this case, distinctions between different classes of persons "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Stanton v. Stanton*, 421 U.S. 7, 14 (1975). As the Second Circuit recognized in *Francis*, "[r]eason and fairness would suggest that an alien whose ties with this country are so strong that he has never departed after his initial entry should receive at least as much consideration as an individual who may leave and return from time to time." 532 F.2d at 273.

Throughout this litigation, the government has been unable to provide a rational basis for this unequal treatment. The majority attempts to conjure one, urging that the rational basis for making section 212(c) relief available only to aliens in exclusion proceedings is to encourage "self-deportation" and thus save government resources. There is no record support for this rationale, and the majority's reasoning contains two fundamental flaws. First, there is no support for the contention that encouraging "self-deportation," as described by the

majority, would actually further the interest of saving government resources. Second, the rational reason the majority prescribes to Congress presumes an interest which is actually in conflict with the statute itself. While the majority correctly notes that we do not have to look to the actual rationale for the legislation, in order to be rational, the reason must be consistent.

When an LPR leaves and attempts to reenter the country and is deemed excludable yet potentially eligible for a section 212(c) waiver, the LPR is generally allowed to enter and to apply for the waiver from within the country. If the alien is ultimately denied the waiver, the government must remove him. No fewer government resources are exerted than if the alien applied for a § 212(c) waiver during a deportation proceeding. Moreover, if the statute were to actually function as the majority presumes and encourage aliens to voluntarily place themselves in this position—a contention which I find dubious—this would increase the number of removal proceedings, which would, in turn, spend *more* government resources.[2] There is no support in the record for the assertion that treating returning LPRs differently from those who remain would save government resources.

Second, implicit in the majority's argument that a rational Congress would want to encourage aliens who are excludable but eligible for section 212(c) waiver to place themselves in

---

[2]The majority responds that the government may "exclude those it believes are less likely to obtain relief." If we are going to assume that LPRs will be fully informed, in advance, about the differing availabilities of relief in deportation and exclusion proceedings and will make rational, calculated decisions about voluntarily leaving the country in order to initiate an exclusion proceeding, we should also assume these individuals will take into account the likelihood of obtaining relief. Those unlikely to obtain relief are equally unlikely to take the risk of leaving the country. The majority's speculation does nothing to undermine the point that there is no support for the notion that encouraging "self-deportation" will save government resources.

exclusion proceedings is the assumption that a rational Congress would want these persons to leave the country. This is inconsistent with the fact that, by creating section 212(c) waiver, Congress explicitly identified this group of aliens as desirable for reentry to the country, subject to the Attorney General's discretion. This is not a group of aliens who, if they are identified, will necessarily be removed from the country. Rather, this is a group of aliens whom Congress has deemed worthy to remain in the country, in spite of having been convicted of particular crimes.[3] This is the group that is being sorted based on whether or not they have recently departed and reentered the country. There is simply no logical reason to discriminate between persons whom Congress has deemed worthy—subject to the discretion of the Attorney General—of remaining in the country based on whether or not they have recently departed the country.[4] As low a threshold as the rational basis test is, this statutory scheme does not pass.

## B

The majority's dismissal of the constitutional problem in the text of section 212(c) also implicitly casts considerable

---

[3]At the risk of stating the obvious, making section 212(c) relief available only in exclusion proceedings would not encourage aliens to leave the country permanently, but would only encourage them—again, if at all—to leave and immediately reenter so as to take advantage of section 212(c) waiver.

[4]The majority responds that "it makes perfect sense to want [an LPR] to be outside our borders when" he learns that he will not receive relief. However, as discussed above, an LPR who is stopped at the border for being excludable but who is also eligible for § 212(c) relief will generally be admitted and continue the relief application from within the country. Thus, if he is ultimately denied relief, he will, in fact, be inside our borders when he gets "the bad news."

The majority, I respectfully suggest, quotes Judge Posner out of context. Judge Posner was addressing the rationale for allowing the option of voluntary departure, which occurs *after* a deportation proceeding has been initiated. *See LaGuerre v. Reno*, 164 F.3d 1035, 1041 (7th Cir. 1998).

doubt on the constitutionality of a federal regulation. After the Supreme Court held that IIRIRA does not apply retroactively to deny section 212(c) relief to aliens who plead guilty to a charge which would otherwise make them eligible for a section 212(c) waiver prior to the enactment of IIRIRA, *INS v. St. Cyr*, 533 U.S. 289 (2001), the Department of Homeland Security ("DHS") promulgated 8 C.F.R. § 1212.3 to codify the holding in *St. Cyr*. That regulation provides that, assuming an alien in a deportation proceeding meets other requirements, the alien is eligible for section 212(c) relief unless "[t]he alien is deportable under former section 241 of the Act or removable under section 237 of the Act on a ground which does not have a statutory counterpart in section 212 of the Act." 8 C.F.R. § 1212.3(f)(5).[5] The regulation thus proceeds on the long-standing assumption, which the majority has now overruled in our Circuit, that section 212(c) is applicable to both deportation and exclusion proceedings.

By holding that the statutory language of section 212(c) is clear and that *Francis* and *Tapia-Acuna* did not "accord[ ] sufficient deference" to Congress, the majority has implicitly questioned DHS's authority to enact the above regulation. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-843 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the agency, must give effect to the unambiguously expressed intent of Congress."). Under the majority rule, the regulation that has been applied in thousands of cases cannot survive. Those who were eligible to apply for relief yesterday under the regulation are on very uncertain ground today.

### C

There is, in sum, no reason to depart from our long-established precedent, developed over many decades in this

---

[5]The BIA relied on this regulation in affirming the denial of section 212(c) relief to Abebe.

Circuit and every other. The BIA has acted in reliance on it, and the government has exercised its discretion based on this precedent to grant relief to thousands of individuals. There is no justification for casting the system aside now and throwing thousands of pending applications for section 212(c) relief into question, particularly when it is unnecessary to the resolution of this petition to do so.

## II

Applying the constitutional analysis discussed in Part I to the present case, I would hold that Abebe is eligible for section 212(c) relief because the specific offense which makes him deportable would also make him excludable. Equal protection demands that we treat equally aliens similarly situated. In cases such as this, it is the act or offense itself that makes one alien similarly situated to another, not the grounds the government chooses to use to deport the aliens. To clarify our caselaw and to bring it into proper constitutional alignment, I would overrule *Komarenko v. INS*, 35 F.3d 432 (9th Cir. 1994) (applying a comparable grounds test), and follow the lead of the Second Circuit's well-articulated opinion in *Blake*, 489 F.3d 88 (applying an offense-specific test).

As Judge Berzon explained in her thoughtful concurrence to the panel opinion in this case, the comparable ground approach adopted in *Komarenko* is irreconcilable with the equal protection analysis discussed in Part I, *supra*, and in *Tapia-Acuna*. Indeed, the comparable ground approach creates new problems. Just as the distinction between deportable aliens who are alike except that one temporarily left the country while the other did not is arbitrary, the comparable grounds test turns on equally arbitrary grounds.

Consider Alien A, who commits assault with a deadly weapon. He is deportable because his offense falls into the category "aggravated felonies." He is also excludable because that same offense falls into the category "crimes involving

moral turpitude." In an exclusion proceeding, his offense, as a "crime of moral turpitude," would make Alien A eligible for a § 212(c) waiver. If he ends up in deportation proceedings, however, he is not eligible for § 212(c) relief, under the comparable grounds test, because the category "aggravated felonies" is sufficiently different from the category of "crimes involving moral turpitude." Alien B, on the other hand, who commits a drug offense is also both deportable and excludable, but is eligible for § 212(c) relief in a deportation proceeding simply because drug offenses were described with similar words in the deportation and exclusion statutes.

This type of classification between aliens who are otherwise similarly situated violates equal protection unless it is rationally related to a legitimate government interest. *Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 603 (9th Cir. 2002). Congress is surely informed by important policy considerations when making determinations about which *offenses* make an alien deportable or excludable. Decisions about the size, scope, and overlap of *categories* of deportable and excludable offenses have no rational relation to judgments about which aliens should be permitted to remain in our country and which should not.

As Judge Berzon pointed out, there is one additional inconsistency between the comparable grounds test and the way that section 212(c) relief functions as a practical matter. Once an alien receives a waiver of excludability under either section 212(c) or other waiver provisions, the alien cannot be deported or excluded in the future solely due to the offense on which he received the waiver. This is true even if there is a category of deportable crimes that applies to his offense which is different from the category that permitted the waiver. *See, e.g., Matter of Balderas*, 20 I. & N. Dec. 389, 392 (BIA 1991). In other words, section 212(c) relief is itself offense-specific, not ground-specific.

III

Additionally, I respectfully dissent from the majority's holding that Abebe did not exhaust his claim for withholding of removal. Abebe raised this claim in his notice of appeal before the BIA. The purpose of the administrative exhaustion requirement is so that the "administrative agency [may] have a full opportunity to resolve a controversy or correct its own errors before judicial intervention." *Sagermark v. INS*, 767 F.2d 645, 648 (9th Cir. 1985). When a petitioner raises an issue in his notice of appeal, the BIA has a "full opportunity to resolve [the] controversy," particularly in light of the fact that the petitioner is not required to file an accompanying brief. *See* 8 C.F.R. § 3.38(f) (1999) ("Briefs *may* be filed by both parties . . . ." (emphasis added)). *Ladha v. INS*, 215 F.3d 889, 903 (9th Cir. 2000), was correctly decided. I would hold that Abebe exhausted his claim for withholding of removal and would thus remand to the BIA for consideration of the claim in the first instance.

IV

For all of these reasons, I would find Abebe eligible for section 212(c) relief. To classify aliens based on the happenstance of whether they have recently departed the country and reentered furthers no logical government interest. Similarly, to classify aliens in deportation proceedings whose deportable offense is also a ground for exclusion based on the agency-created category into which the offense happens to fall serves no legitimate government interest. I would hold, following the Second Circuit in *Blake*, 489 F.3d 88, that an alien in a deportation proceeding is eligible for section 212(c) relief if the offense which makes him deportable would also render him excludable. Applying section 212(c) relief to deportation proceedings using an offense-based analysis is the only constitutional interpretation of the statute. In addition, I would hold that Abebe exhausted his claim for withholding of removal and allow him to pursue that claim on remand. *Tapia-Acuna*,

640 F.2d 223, and *Ladha*, 215 F.3d 889, were rightly decided. *Komarenko*, 35 F.3d 432, should be overruled.

Like the Second Circuit in *Blake*, 489 F.3d at 91, I find Judge Learned Hand's caution particularly apt here: "It is well that we should be free to rid ourselves of those who abuse our hospitality; but it is more important that the continued enjoyment of that hospitality once granted, shall not be subject to meaningless and irrational hazards." *Di Pasquale v. Karnuth*, 158 F.2d 878, 879 (2d Cir. 1947). There is no rational basis for treating a lawful permanent resident who steps across the border for a day better than one who does not.

For these reasons, I respectfully dissent.